WILLIAMS & WORKS, INC v SPRINGFIELD CORPORATION

Docket No. 61180. Argued October 3, 1979 (Calendar No. 9).—Decided
    June 24, 1980.

 Williams & Works, Inc., a civil engineering firm, brought an
    action against Springfield Corporation, the one-time owner and
    general contractor on property in Flint Township, Genesee
    County, on which Bristol Square, an apartment project, was
    being developed, for foreclosure of a mechanics' lien. Other
    contractors claiming mechanics' liens, the successor owner, and
    Kelly Mortgage and Investment Company, a former owner
    which had recorded a mortgage given by Springfield on the
    property, were joined as defendants. The Genesee Circuit Court,
    Philip C. Elliott, J., granted judgments of foreclosure to the
    lienors with priority over the mortgage held by Kelly Mortgage
    and Investment Company. The trial court found that the engi-
    neering services performed by plaintiff Williams & Works, Inc.,
    constituted "improvements" to the property which were "com-
    menced" before the mortgage was recorded within the meaning
    of the priority provision of the mechanics' lien act. The Court
    of Appeals, R. B. Burns, P.J., and Allen and R. M. Maher, JJ.,
    affirmed the judgments for the lienors (Docket Nos. 26617-
    26619, 26625, 26626, 26628). Defendant Kelly Mortgage and
    Investment Company appeals. In a unanimous opinion by Jus-
    tice Williams, the Supreme Court *held:*

 *1.* The commencement of a building has a well-established
    meaning in the law of mechanics' liens as an act which should
    make known to a person viewing the premises, from observa-
    tion alone, that building has begun. There must be some actual,
    visible work on the land to give constructive notice to prospec-
    tive lenders or purchasers of the possible existence of mechan-
    ics' liens. The Court has previously held that it is clear that the
    drawing of plans for a building is not its "commencement"
    within the meaning of the mechanics' lien act.

 *2.* The mechanics' lienors in this case argue that the amend-

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 53 Am Jur 2d, Mechanics' Liens §§ 248, 249.
 What constitutes "commencement of building or improvement" for
    purposes of determining accrual of mechanic's lien. 1 ALR3d 822.

ment of the mechanics' lien act to make engineering and surveying services lienable as "improvements" also expanded the meaning of the term for purposes of the priority provision and that the expanded definition of improvement should be substituted where the word appears in that provision. To make such a mechanical substitution, however, would create illogical results, which indicates clearly that the Legislature had no such intention. The words preceding "improvement" in the priority provision, "building", "machinery", and "structure", generally suggest a visible project or a tangible product; plainly, the furnishing of engineering services is not comparable to the attachable, on-site products contemplated by the priority provision. It is unreasonable to believe that the Legislature intended to change indirectly the well-established priority rule by one of the additions to the lienable services listed in another section of the statute. The mere fact that the work was the proper subject of a mechanics' lien cannot establish priority where it does not give visible notice of the commencement of the construction.

3. Whether Kelly Mortgage and Investment Company had actual notice of the services being performed by Williams & Works, Inc., before it recorded the mortgage is not relevant to determining the priorities in this case. The issue is when "commencement" of the building or improvement occurred. Such knowledge alone does not constitute waiver or estoppel; to hold otherwise would be to expose lenders to so many unpredictable hazards that construction financing would become extremely difficult. The mechanics' lien laws are for the protection of property owners, and those who take secured interests in land, as well as mechanics' lien claimants. Construction and purchase money loans are not made in a vacuum. Lenders often consult engineers in order to evaluate and minimize their risks. If use by a lender of plans prepared by engineers for the owner or purchaser of the property is to change the statutory rules of priority, the change must be sought from the Legislature and not from the Court.

Reversed.

81 Mich App 355; 265 NW2d 328 (1978) reversed.

1. MECHANICS' LIENS — PRIORITY — COMMENCEMENT OF IMPROVEMENT — WORDS AND PHRASES.

The commencement of a building has a well-established meaning in the law of mechanics' liens as an act which should make known to a person viewing the premises, from observation alone, that building has begun; there must be some actual,

visible work on the land to give constructive notice to prospective lenders or purchasers of the possible existence of mechanics' liens (MCL 570.9; MSA 26.289).

2. MECHANICS' LIENS — PRIORITY — COMMENCEMENT OF IMPROVEMENT — ARCHITECTS — ENGINEERS.

The performance of engineering services for the construction of a building is not a "commencement" of an improvement sufficient to give mechanics' lienors priority over a mortgage which was recorded before there was any visible construction of the building; the mere fact that the mechanics' lien statute has been amended so that the engineering work is the proper subject of a lien cannot establish priority when the work does not give visible notice of the commencement (MCL 570.9; MSA 26.289).

3. MECHANICS' LIENS — PRIORITY — COMMENCMENT OF IMPROVEMENT — ARCHITECTS — ENGINEERS — MORTGAGES.

Whether a mortgagee had actual notice of engineering services being performed for the construction of a building before it recorded the mortgage is not relevant to determining the priorities between the mortgage and mechanics' liens on the property; the issue is when "commencement" of the building or improvement occurred (MCL 570.9; MSA 26.289).

*Brownell, Andrews, Philpott & Piper* for defendants Garno Brothers Heating & Cooling, Inc., PPG Industries, Inc., and Shank, Coupland & Long Company.

*Russell, Ward & Hodgkins* (by *Paul A. Ward* and *James W. Batchelor)* for defendant Kelly Mortgage and Investment Company.

Amicus Curiae:

*Hammond, Ziegelman, Sotiroff & Fishman* (by *Steven J. Fishman* and *Malcolm D. Brown)* for Lawyer's Title Insurance Corporation.

WILLIAMS, J. *(for reversal).* This case concerns the sole question whether off-site engineering services rendered before the beginning of actual, on-

site construction qualify, pursuant to § 9(3) of the Michigan mechanics' lien law, as "the commencement of said building or buildings, erection, structure or improvement"[1] so as to give priority to mechanics' liens over a mortgage recorded after the provision of such services but prior to the beginning of any visible, on-site construction.[2]

Long established Michigan precedent[3] in line with that in most American jurisdictions[4] requires

---

[1] The paragraph of Michigan's mechanics' lien law which governs the specific priority question in this case is MCL 570.9 (third); MSA 26.289 (third) (§ 9 [3] or the "priority section"). In pertinent part this section provides:

"The several liens herein provided for shall continue for 1 year after such statement or account is recorded in the office of the register of deeds, and no longer unless proceedings are begun to enforce the same as hereinafter provided, and such liens shall take priority as follows:

\* \* \*

"Third, They shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the *commencement of said building or buildings, erection, structure or improvement.*" (Emphasis supplied.)

[2] Appellees also contend, cursorily, that the 12 six-inch borings that were filled and staked by the engineering firm of Williams & Works prior to the recordation of the mortgage constituted a "continuing visible notice that improvements were in progress". However, this contention was essentially refuted by cross-examination of Ed Culver, a Williams & Works employee who was present while the borings were taken. Culver testified that there was no other work being performed on the site at the time, the site being essentially a vacant lot covered with weeds. Further, Culver stated that although the soil borings were marked with a stake or flag after they were taken and filled in, the stakes and flags would tend to disappear because children would take them. Thus it is not certain whether these stakes were visible to a reasonable observer inspecting the premises. Further, assuming that the stakes were visible and remained upon the site, such minimal staking of the property is not activity which constitutes "commencement" of a building or improvement within MCL 570.9 (third); MSA 26.289 (third). See, *e.g.,* Anno: *What Constitutes "Commencement of Building or Improvement" for Purposes of Determining Accrual of Mechanic's Lien,* 1 ALR3d 822, 825-828.

[3] See *Kay v Towsley,* 113 Mich 281; 71 NW 490 (1897), and accompanying discussion, *infra,* p 740.

[4] See discussion, *infra,* Part II A.

a visible, on-site "commencement" for the purpose of fixing priorities under § 9(3) of the mechanics' lien law. Plaintiffs in this case, however, claim the Legislature intended to change by indirection this traditional rule based on § 9(3) "commencement of said building or buildings, erection, structure or improvement" by amending the list of lienable items in § 1[5] of the mechanics' lien law to include engineering and surveying services and by adding to the definition of "improvement"[6] found in § 1

---

[5] MCL 570.1; MSA 26.281 (§ 1) is an old (1891 PA 179) much amended section describing what is lienable. In pertinent part it provides:

"*Every person who shall,* in pursuance of any contract, express or implied, written or unwritten, existing between himself as contractor, and the owner, part owner or lessee of any interest in real estate, build, alter, improve, repair, erect, ornament or put in, survey or plat any lot or parcel of land, or portion thereof, or engineer or design any sewers, water lines, roads, streets, highways, sidewalks, or *prepare and furnish* pursuant to such contract to such owner, part owner or lessee of any interest in real estate *any survey, plat, plat of survey or design or engineering plan, or plans,* for the *improvement of any lot or parcel of land* not exceeding one-quarter section of land, or who shall furnish any labor or materials in or for building, altering, improving, repairing, erecting, ornamenting or putting in any house, swimming pool, building, machinery, wharf or structure, or who shall excavate, or build in whole, or in part, any foundation, cellar or basement for any such house, swimming pool, building, structure or wharf, or shall build or repair any sidewalks, sewers, sewage disposal equipment, water lines and pumping equipment or wells or shall furnish any materials therefor, or shall furnish any nursery stock, or labor in connection therewith for any property, or shall rent or lease equipment in connection therewith for any property, and every person who shall be subcontractor, laborer, or material man, perform any labor or furnish materials or shall rent or lease equipment to such original or principal contractor, or any subcontractor, in carrying forward or completing any such contract, *shall have a lien therefor* * * *." (Emphasis supplied.)

The section goes on to describe the scope of the lien and the procedural requirements for its enforcement.

[6] MCL 570.1; MSA 26.281 defines "improvement" as follows:

"*The term 'improvement'* or the plural thereof as used in this act, *shall include* the improvement, beautification or embellishment of property by the furnishing of nursery stock or the performance of labor in connection therewith or the planting thereof, or the furnishing by any registered land surveyor of any survey, plat, plat of survey of any lot or parcel of land, or the furnishing by any registered professional engineer of any engineering design or plans for the

the language, "designs or engineering plans for the improvement of any lot".

In view of the overwhelming weight of historical precedent, whose rationale and policy underpinnings remain vital today, we find that such non-visible, off-site engineering services as those rendered in the instant case, although lienable under Michigan law, do not signal the "commencement" of a building, erection, structure, or improvement for the purpose of fixing priority under Michigan's mechanics' lien law. Accordingly, since the appellant mortgagee recorded its mortgage prior to any visible, on-site construction which could be said to "commence" the building, erection, structure or improvement, the trial court and Court of Appeals improperly accorded priority to the appellee mechanic lienors. We therefore reverse.

## I. FACTS

Springfield Corporation ("Springfield") desired to erect a multifamily apartment building complex on certain land located in Genesee County, Michigan, and owned by LAW Development Company and appellant Kelly Mortgage and Investment Company ("Kelly"). In pursuance of this desire, Springfield contacted Williams & Works ("W & W") about May 16, 1972 in regard to using its engineering services for the contemplated development. Thereafter, on June 8, 1972, Robert Foote,

---

installation of any swimming pools, sewers, water lines, roads, streets, highways, sidewalks, or prepare and furnish pursuant to such contract to such owner, part owner or lessee of any interest in real estate and *other designs or engineering plans for the improvement of any lot* or parcel of land not exceeding one-quarter section of land, or the renting or leasing of any contractor's equipment for excavating, ditching, earth removal, landscaping, leveling, grading or changing the contour of any land, or the repairing, maintaining, restoring, constructing or demolition of any structure or the laying of any drains, sewers or pipelines." (Emphasis supplied.)

President of Springfield, met two representatives of W & W at the contemplated development site for discussions and a preliminary view of the premises. Then, near the end of June, 1972, W & W and Springfield entered into a formal written contract, under which W & W was to perform certain engineering services for the contemplated development. The contract was divided into three parts or phases with Springfield reserving the right to terminate the contract at the end of any phase. Phase I called for W & W to undertake and complete initial feasibility studies which included soil borings, drainage studies, topographical and boundary surveys, preliminary utility plans, cost estimates and plan approvals. Phase II called for W & W to finalize all plans for site development, including final drafting of the construction plans. Phase III involved the actual construction of the project and required W & W to supervise and direct parts of the construction work.

By September, 1972, Phase I was substantially completed. The only on-site work done by W & W during Phase I consisted of certain soil borings, which were taken on August 29, 1972, when two workers drilled twelve holes into the ground, each approximately 6″ in diameter.

After the completion of Phase I, W & W began Phase II and throughout the latter part of 1972, it submitted various construction specifications to Springfield. It was also established that during this period Kelly knew of W & W's work since Kelly had actually written W & W requesting that all correspondence dealing with W & W's work to date be forwarded to Kelly since it would be handling the project for Mr. Foote. In late December, 1972, after substantial completion of the Phrase II drawings, Springfield decided to go for-

ward with the construction of the apartment building project. Thereafter, on January 4, 1973, Springfield purchased the land from LAW Development and Kelly and executed a mortgage on the property to City National Bank ("CNB") which was recorded in Genesee County and which was subsequently assigned from City National Bank to Kelly. On January 9, 1973, Springfield executed a second mortgage to Kelly, which was also recorded in Genesee County. Almost one year later, Springfield conveyed its fee interest in the premises to Bristol Square Properties Group, a limited copartnership in which Mr. Foote and Springfield are the sole general partners, by deed dated December 27, 1973.

It is undisputed that building operations on the premises did not begin until February, 1973, almost one full month after the mortgages were recorded by CNB and Kelly. The initial Phase III work, consisting of staking, began on February 10, 1973 and building operations commenced sometime thereafter. The project went into default in 1974 and this mechanics' lien foreclosure action followed.

This suit was commenced on March 25, 1974, in the Genesee Circuit Court. The Complaint alleges that the plaintiff, W & W, had a mechanics' lien upon the project property and prayed for its foreclosure. Numerous other parties were joined as defendants or intervened, and several cross-claims were filed by various other contractors, alleging mechanics' liens against the property. Kelly, the mortgagee in the instant proceeding, as well as other defendants aligned in interest, answered the various mechanics' lien claims, denying the validity of the claims and asserting that the mortgage interest in the property was superior and para-

mount to the interest of the various mechanics' liens.

After pretrial and trial proceedings concluded, the trial court entered judgments of foreclosure against the owner of the apartment project, Bristol Square Properties Group, in favor of W & W and the instant appellee mechanics' lienors (Shank, Coupland and Long Co., PPG Industries, Inc., and Garno Brothers Heating and Cooling, Inc., all subcontractors who began supplying labor and materials while the project was owned by Springfield, and completed their work after Springfield conveyed to Bristol Square Properties Group). The trial court also ruled that all mechanics' liens were prior to the mortgage interest of Kelly in the property because it found W & W's services to have been "improvements", as that term is defined in § 1, MCL 570.1; MSA 26.281, which were "commenced" before the mortgage was recorded.

The Court of Appeals affirmed the trial court's conclusion that, in the instant case, "commencement", for purposes of priority, meant when engineering services were first performed, and not when actual construction on the site was begun. 81 Mich App 355, 362-363; 265 NW2d 328 (1978).

We granted leave to appeal on March 5, 1979 limited to the issue of priority between the mortgage and the mechanics' liens under § 9(3), MCL 570.9 (third); MSA 26.289 (third).

## II. Discussion

### A. Michigan's Mechanics' Lien Law Pre-1958

The term "commencement of a building" had a well-established meaning in most states when Michigan incorporated that term into its own mechanics' lien law. As illustrative of this mean-

ing, and in order not to belabor the point, we quote from one such case, while citing the reader to others which preceded or were contemporaneous with Michigan's statute:

"The commencement of a building is the doing of some act upon the ground upon which the building is to be erected, and in pursuance of a design to erect, the result of which act should make known to a person viewing the premises, *from observation alone,* that the erection of a building upon that lot or tract of land has been commenced." *James v Van Horn,* 39 NJL 353, 363 (1877). (Emphasis supplied.)

Accord, *Brooks v Lester,* 36 Md 65 (1872); *Kansas Mortgage Co v Weyerhaeuser,* 48 Kan 335; 29 P 153 (1892); *Fitzgerald v Walsh,* 107 Wis 92; 82 NW 717 (1900); *Conrad & Ewinger v Starr,* 50 Iowa 470 (1879).

Likewise, early Michigan case law espoused this same idea of keying the concept of "commencement" in its priority section to some actual, visible work on the land such that it was apparent to all that a building was being erected or improvements were being made. In *Kay v Towsley,* 113 Mich 281, 283; 71 NW 490 (1897), this Court, in ruling that two materialmen's liens were prior to that of a mortgagee who had recorded his mortgage prior to the furnishing of the materials but subsequent to the erection of the foundation wall, stated:

"This provision [the priority provision in the Mechanics' Lien Law] has been passed upon frequently by the courts, and it has been uniformly held that the lien has priority over a mortgage executed upon the land or premises *after the actual commencement* of the building, though no part of the labor performed or materials furnished for which the lien is claimed was done or performed until after the execution and recording of

the mortgage." (Emphasis supplied.) See, also, *Stevens v Garland,* 198 Mich 24, 32; 164 NW 516 (1917); *Peninsular Stove Co v Crane,* 226 Mich 130, 137-138; 197 NW 693 (1924).

One early commentator summarized the meaning of "commencement of said building" in Michigan thus:

"In determining priorities, liens attach as of the date of the actual commencement of the building or improvement, regardless of the time when, or person by whom, particular work is done or materials furnished, for which lien is claimed. *The building is begun when the first permanent work is done on the land.*" (Emphasis supplied; citations omitted.) Wykes, The Michigan Laws of Mechanics' Liens (2d ed), pp 167-168, fn 2.

"Commencement", then, as defined by early case law and commentary, required an act of such a character that it was notice to all of the existence of mechanics' liens. As Professor Thompson wrote:

"The 'commencement of a building', within the meaning of these statutes, is the first labor done on the ground which is made the foundation of the building, and forms part of the work suitable and necessary for its construction. It is some work or labor on the ground, such as beginning to dig the foundation, which everyone can see and recognize as the commencement of a building; and the work, moreover, must be done with the intention thus formed of continuing it to completion." (Footnotes omitted.) 8A Thompson, Commentaries on the Modern Law of Real Property (1963 Supp), § 4427, p 228. Accord, Anno, 1 ALR3d 822, § 2, p 824.

In such fashion, "commencement" of a building gave constructive notice to prospective lenders or purchasers of the possible existence of liens. See Phillips on Mechanics' Liens (3d ed), § 218, 385-

388; Flick, Abstract & Title Practice, § 734, pp 716-717. This visible notice was especially important since under Michigan's mechanics' lien act, as well as those of other states, "commencement" fixed the date to which all mechanics' liens related back, even if other contractors started their work weeks or months later. MCL 570.9 (first); MSA 26.289 (first).[7] It was in keeping with this interpretation that this Court early held, in response to a mechanic lienor's contention, analogous to that made in the present case, that the "commencement" of a building occurred when the architect began drawing the plans and specifications for the building, that

"[i]t is, we think, clear, that the drawing of plans for a building is not 'the commencement of said building or buildings.'" *Stevens v Garland,* 198 Mich 24, 32; 164 NW 516 (1917).

## B. Michigan's Mechanics' Lien Law Post-1958

In 1958 the Michigan Legislature amended § 1 of the mechanics' lien law, which describes lienable services, to include engineering and surveying services.[8] Amended § 1, further, included engineering and surveying services under the definition of the word "improvement":

"The term 'improvement' or the plural thereof as used in this act, shall include the * * * prepar[ing] and

---

[7] MCL 570.9 (first); MSA 26.289 (first) provides:

"As between persons claiming liens under this statute, the several liens upon the same property attaching by reason of work, labor or materials furnished in carrying forward or completing the same building or buildings, machinery, structure or improvement, shall be deemed simultaneous mortgages."

[8] 1958 PA 213. See fn 5, *supra,* for the text of the pertinent part of § 1.

furnish[ing] * * * designs or engineering plans for the improvement of any lot or parcel of land * * *."[9]

The gist of appellees' argument on appeal to us is that this definition of "improvement" found in § 1 of the mechanics' lien law describing liens is freely substitutable for the word "improvement" as it appears in the priority section of the lien law. The word "improvement" appears in § 9(3) in the following context:

"Third, they [mechanics' liens] shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said building or buildings, erection, structure or *improvement.*" (Emphasis supplied.)

By this process of substitution, the appellees present us with a priority section which they claim, in this case, should read, in edited fashion, as follows:

"Third, they [W & W as professional engineers] shall be preferred to all liens recorded subsequent to *the commencement of its furnishing engineering design or plans for the improvement of said lot.*" (Emphasis in appellees' brief.)

To safeguard their position, appellees assert that the cases requiring visible, on-site construction in order to constitute "commencement" are obsolete since they construed the act at a time when engineering services were not lienable and that cases from other jurisdictions are of little significance

---

[9] See fn 6, *supra.* The germinal definition of the word "improvement" was added to § 1 of the act in 1941. 1941 PA 266. At that time "improvement" was defined only in terms of the furnishing or planting of nursery stock.

since they construe statutes different from that of Michigan.

The issue for resolution, then, is whether the Legislature, by amending MCL 570.1; MSA 26.281 to expand the definition of lienable items to include engineering services, intended to effect a departure from the requirement of visible, on-site construction which courts have traditionally required for a building or improvement to be "commenced" for purposes of the priority section. In other words, should the performance of non-visible, off-site engineering services before the recording of a mortgage, as was done in the present case, be sufficient to give all mechanics' lienors priority over the mortgagee?

We find the appellee mechanics' lienors' substitution of the definition of "improvement" found in § 1 for the word "improvement" found in the priority section, although of some superficial persuasiveness, to be fundamentally unsound for several reasons.

First, if appellees' contention is correct, then the § 1 definition of "improvement" should be freely substitutable wherever the word "improvement" is used in § 9 since that word always appears in the same context in several of that section's subsections, *i.e.,* it appears at the end of a series of attachable items such as a building or buildings, machinery, erection, or structure. The illogical result of such mechanical substitution, however, indicates clearly the Legislature had no such intention. For example, § 9(4) actually reads as follows:

"The liens for such labor or materials furnished * * * shall attach to the buildings, machinery, erection, structure, or improvement for which they are furnished or done, subject to any prior recorded title, claim, lien,

incumbrance, or mortgage to or upon the land upon which such building or buildings, machinery, erection, structure or improvement belongs or is put. * * *"

By incorporating the § 1 definition of "improvement" into § 9(4) wherever the word "improvement" is located, and by using the lien granted by § 1 for the preparation of an engineering plan as the hypothetical lien seeking § 9(4)'s application, we get the following:

"The lien for *[the preparation of the engineering plan]* shall attach to the buildings, machinery, erection, structure, or *[preparation of the engineering plan]* for which [the] *[preparation of the engineering plan]* [is] furnished or done, subject to any prior recorded title, claim, lien, incumbrance, or mortgage to or upon the land upon which such building or buildings, machinery, erection, structure or *[preparation of the .engineering plan]* belongs or is put." (Emphasis to show substitution.)

It is clear that § 9(4) contemplates a sequence that cannot possibly accommodate appellee's proposed substitution. Section 9(4) provides that the furnishing of a lienable service (such as an engineering plan) will give the engineer a lien on the end product for which the engineering plan was furnished, namely the "buildings, machinery, erection, structure or improvement".

Second, in the absence of specific precedent on the meaning of the word "improvement" in § 9(3), we are guided by accepted principles of construction. One such principle is *noscitur a sociis,* a principle relating the word in question to the associated words in the statutory context. 2A Sands, Sutherland Statutory Construction (4th ed), § 47.16, p 101. The words preceding "improvement" in § 9(3)—building, machinery, and· struc-

ture—generally suggest a visible project or a tangible end product. Plainly, the furnishing of off-site engineering services is not the type of "improvement" which is comparable to the attachable, on-site products contemplated by the words "building", "machinery", and "structure".

Third, we think it unreasonable to believe the Legislature intended to indirectly change § 9(3), containing the traditional and well-established rule requiring a visible, on-site commencement of construction in order to establish priority, by the simple expansion of the lienable services outlined in a different section, § 1. Section 1 and § 9(3) treat of two entirely different concepts. Section 1 merely determines *what* is a lienable service in Michigan. It runs the gamut from the furnisher of labor and materials and the surveyor and engineer to the renter or lessor of equipment and the supplier of nursery stock. See fn 5, *supra.* Section 9(3), on the other hand, deals with the determination of *when* a particular lien attaches for priority purposes. It specifically leaves the establishment of what services are lienable to another part of the act, *i.e.,* § 1, and concerns itself primarily with the ascertainment of the priorities among the liens:

"The several liens *herein provided for * * ** shall take priority as follows: [hereafter follow four rules for determining priorities]." (Emphasis supplied.)

Fourth, the 1958 amendment to § 1 of the mechanics' lien law was only one of successive amendments to that section expanding *what* constitutes a lienable service in Michigan. For example, the protection of this section was extended to nursery stock in 1941, to surveying and engineering services and works in 1958, to sewers, sewage disposal equipment, water lines and pumping

equipment in 1960, to rented or leased equipment in 1963, and to swimming pools in 1965. See fn 5, *supra.*

Fifth, in contradistinction to this constant expansion of lienable services under § 1, § 9(3), fixing priorities, has been conspicuously quiescent. Not one of the many amendments to § 1 has been accompanied by an amendment significantly affecting the priority section of the mechanics' lien law.[10] Cf. *Rupp v Earl H Cline & Sons, Inc,* 230 Md 573, 577; 188 A2d 146, 148 (1963).

Sixth, this Court in *Wallich Lumber Co v Golds,* 375 Mich 323, 327; 134 NW2d 722 (1965), a case decided after the 1958 amendment to § 1, recognized the early judicial construction of the virtually unchanged priority section. *Wallich* made explicit reference to *Kay v Towsley, supra,* where that case specifically referred to the fact that a "lien has priority over a mortgage executed upon the land or premises *after the actual commencement of the building * * *"* (emphasis supplied).

For the above reasons, we believe that the Legislature neither intended the § 1 definition of "improvement" to be freely substitutable for the word "improvement" found in § 9, nor intended to indirectly change the established interpretation of § 9(3) through an amendment of § 1. Thus, we find that while the Legislature has continually broadened the range of lienable services in Michigan, it has not chosen to effect any change in the long-established judicial interpretation of "commencement of said building or buildings, erection, structure or improvement" as that phrase has been used in the past to determine priority between a

---

[10] A minor 1958 amendment to MCL 570.9; MSA 26.289 substituted the word "recorded" for "filed". 1958 PA 213. The language "commencement of said building * * * or improvement" remained unchanged.

mechanics' lienor and a mortgagee. As the Supreme Court of Arkansas observed in this regard within the context of a similar mechanics' lien law scheme:

"The statute provides for a lien for work upon a building or improvement [Ark Stat Ann § 51-601] but the priority is determined by the 'commencement' (§ 51-607). The mere fact that the work was the proper subject of a lien cannot establish priority when it does not give notice of the commencement." *Clark v General Electric Co,* 243 Ark 399, 406; 420 SW2d 830, 834 (1967). See also *Reuben E Johnson Co v Phelps,* 279 Minn 107, 113-114; 156 NW2d 247, 251-252 (1968).

In short, visible, on-site construction, such that it is obvious from the work done on the premises that a building, erection, structure or improvement is in progress, is still required in order to signal "commencement".[11]

---

[11] Substitution of the definition of "improvement" found at the end of § 1 for the word "improvement" found in § 9(3) would also seem to run afoul of the legislative history of the § 1 definition of "improvement". While the word "improvement" has been a part of the § 9(3) priority section since 1891, § 1, on the other hand, did not contain the definition of the word "improvement" when it was first enacted in 1891. The definition of "improvement" was not added to § 1 until 1941 when the Legislature decided to expand § 1 to provide a mechanic's lien for the furnishing or planting of nursery stock. 1941 PA 266. Legislative history reveals that this 1941 amendment to § 1 providing for the nursery stock lien originally was introduced into the House as a separate nurseryman's lien act. (House Bill 258 introduced by State Representative Sawyer on March 6, 1941. 1 Michigan House J [1941] 414.) However, when this proposal for a separate act was made a part of the existing mechanics' lien law by a Senate sub-committee, significantly, both the definition of the word "improvement", as well as the definition of the word "nursery stock" found in § 1 were culled from language in § 1 of the original House Bill 258 that governed activities giving rise to a lien and the scope of that lien. It was another section of the House Bill, § 4, that governed priorities. In short, inasmuch as the legislative source of the word "improvement" in § 1 of the present mechanics' lien law had its source in a section which dealt with *what* was a lienable service (and which left priority matters exclusively to another section), that section would seem ill suited to serve as the basis for resolving present § 9(3) priority disputes.

We feel our holding today is consonant with the great weight of modern judicial authority. Indicative of this is the analogous decision of a unanimous California Supreme Court in *Walker v Lytton Savings & Loan Ass'n of Northern California,* 2 Cal 3d 152; 84 Cal Rptr 521; 465 P2d 497 (1970). In that case plaintiff architects contended that they had priority over a deed of trust given to secure a construction loan where the architects had prepared plans and specifications for the proposed construction prior to the recording of the deed of trust. The deed of trust, however, was recorded in advance of any actual, on-site physical construction. The then applicable California law (Cal Code of Civil Procedure, § 1188.1), similar to our own, provided that certain liens (including an architect's work) were preferred to any deed of trust "which may have attached *subsequent* to the time when the building, improvement, structure, or *work of improvement* in connection with which the lien claimant has done his work * * * was *commenced"* (emphasis added). Analogous to the broad definition of "improvement" found in § 1 of Michigan's mechanics' lien law, § 1182 of the California Code of Civil Procedure defined "work of improvement" as the entire structure or "scheme of improvement as a whole". The California Court, in refusing to support the architects' argument that their preparation of plans was part of the "scheme of improvement as a whole", there stated:

"We are convinced that under such circumstances it cannot be held that the structure or work of improvement had commenced within the meaning of the priority rules of section 1188.1 or that plaintiffs' preparation of plans and specifications constituted such commencement so as to give their lien priority over the deed of trust.

* * *

"Thus the general rule is that such a lien does not attach unless and until *construction* has been undertaken by the doing of actual visible work on the land or the delivery of construction materials thereto." *Walker, supra,* 156-157 (emphasis in original). See also *Aladdin Heating Corp v Trustees of the Central States, Southeast & Southwest Pension Fund,* 93 Nev 257, 260; 563 P2d 82, 84 (1977); *Western Mortgage Loan Corp v Cottonwood Construction Co,* 18 Utah 2d 409, 412; 424 P2d 437, 438 (1967); *M E Kraft Excavating & Grading Co v Barac Construction Co,* 279 Minn 278, 284; 156 NW2d 748, 752 (1968).

We also believe that our decision, in continuing to key "commencement" into the concept of constructive notice, is based on sound public policy. Were we to adopt appellees' position and rule that the "commencement" of a building, erection, structure or improvement could be triggered by the rendering of off-site, non-visible engineering plans, mechanics' liens could relate back to a long time before any visible signs of construction existed to inform prospective lenders inspecting the premises that liens had attached. Under such circumstances, construction financing would become exceedingly difficult. It was just such a concern that compelled the California Supreme Court in *Walker, supra,* to reach the same result we do today.

"But, if, despite these specific and detailed rules laid down by the Legislature, it be held for the benefit of plaintiff architects that even though, as here, an encumbrance has attached before any work has been done on the owners' property or materials delivered thereto for a planned improvement, nevertheless the work of improvement had commenced earlier when the architects began work on the plans and specifications, then the liens of all others who contributed work or materi-

als to the work of improvement * * * would likewise relate back to the earlier date of commencement and thereby take priority over the subsequent encumbrance —whether given for a construction loan or based on some other consideration. That the Legislature intended no such result seems obvious. Additionally, under such circumstances it would appear that construction loans would shortly become next to impossible to obtain, as it is a rare construction project of any magnitude which does not require the preliminary nonvisible services of architects or engineers. But if all liens arising from the subsequent construction will relate back to the date of commencement of the nonvisible services, how many prudent businessmen would be willing to assume the risk?" *Walker, supra,* 159-160. Accord, *Aladdin Heating Corp, supra,* 260.

In contrast to this significant judicial authority, we have found only one jurisdiction that takes a contrary approach. See *Bankers Trust Co v El Paso Pre-Cast Co,* 192 Colo 468; 560 P2d 457 (1977). Appellees have cited to us no other relevant case law.[12]

---

[12] We also note that several legislatures which have specifically addressed the priority question involving non-visible, off-site work like that of an engineer have required some form of visible on-site work before the lien of the engineer could attach for priority purposes. For example, in 1974 Minnesota amended its mechanics' lien law to specifically include engineering and land surveying services (Minn Stat Ann, § 514.01). At the same time, Minn Stat Ann, § 514.05 was amended to say, "Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises". Likewise Wisconsin, in a 1967 amendment, provided in Wis Stat Ann, § 289.01(4) that lien claimants "who * * * furnish * * * plans or specifications for an improvement prior to the visible commencement of the work of improvement shall have lien rights, but shall have only the priority accorded to other lien claimants". The Wisconsin Legislative Council note to this amendment states that a "lender need no longer fear that prior surveying * * * or other site preparation will render his mortgage subordinate to all construction lien claimants. Also, a sentence has been added to make clear that architects or those who work on site preparation do have lien rights, but have only the same priority as the later claimants". 35 Wis Stat Ann (1979-1980 Cum Supp), p 29.

Finally, one last contention of appellees' needs to be addressed. Appellees argue that because appellant Kelly had actual notice (of which there is record support) of the identity of and services being furnished by W & W before it sold the land to Springfield and filed mortgage liens, it should not be heard to urge the adoption of a visible and actual commencement standard in this particular case. It is unclear whether this argument rests on notions of waiver or estoppel. However, whatever the theory, actual notice is not the relevant issue in determining the priorities question in this case. The issue is the determination of when "commencement" of the building or improvement occurred. In *Walker, supra,* it was found that the holder of the deed of trust had actual knowledge that plaintiff architects had provided services. In fact Lytton, the holder of the deed of trust, had relied on plaintiffs' work in making its appraisal for loan purposes. The Court, after noting that the condition precedent to the architects' priority was the commencement of construction, stated that such knowledge alone cannot constitute waiver or estoppel. In support of this conclusion, the Court opined, quoting from *Tracy Price Associates v Hebard,* 266 Cal App 2d 778, 787-788; 72 Cal Rptr 600 (1968), that

" 'To hold that such knowledge constitutes waiver or estoppel would expose lenders to so many unpredictable hazards that construction financing would become extremely difficult. Although mechanic's lien laws should be liberally construed to protect those who have contributed skills, services or materials, towards the improvement of property, it has been recognized that lien laws are for the protection of owners as well as mechanic's lien claimants. * * * It may be said with equal validity that section 1188.1 * * * prescribing a rule for determining priorities was designed for the protection

of those who take security interests in land as well as for the protection of mechanic's lien claimants.' " *Walker, supra,* 158. See also *M E Kraft Excavating & Grading Co, supra,* 286-287.

We agree with the California Supreme Court that construction and purchase money loans are not made in a vacuum. Lenders often consult engineers' work in order to evaluate and minimize their risks. Thus if a lender's use of and reliance upon the plans prepared by engineers on behalf of the owner or would-be purchaser are to work a change in the statutory priority rules, the change must be sought from the Legislature and not from this Court.

### III. CONCLUSION

Because we have found that the engineering services here at issue were not such as to constitute the "commencement of said building or buildings, erection, structure or improvement",[13] the trial court erred in its ruling that the appellee mechanics' lienors had priority over the mortgage held by appellant Kelly. Accordingly, we reverse the decision of the Court of Appeals and vacate the trial court's judgment and order.

Costs to appellant.

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

---

[13] We intimate no view on just what work will be sufficient to signal the "commencement" of a building, erection, structure or improvement. See Anno, 1 ALR3d 822.