## BILT-MORE HOMES, INC., *v.* FRENCH.

1. LICENSES—RESIDENTIAL BUILDING CONTRACTOR—FOREIGN CORPORATION—AUTHORITY TO DO BUSINESS.

   A valid license as a residential building contractor may not be issued to a foreign corporation until it has been authorized to do business in this State (CLS 1961, § 338.976).

2. SAME—RESIDENTIAL BUILDING CONTRACTOR—POLICE POWER.

   The statute relative to licenses for residential building contractors was expressly enacted under the police power to protect the public (CLS 1961, § 338.971 *et seq.*).

3. SAME—RESIDENTIAL BUILDING CONTRACTOR—RECOVERY OF COMPENSATION—STATUTES.

   A residential building contractor who was not validly licensed as such at the time he performed service for which he seeks compensation may not recover therefor, in view of the prohibitory language of the licensing statute (CLS 1961, § 338.986).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur, Foreign Corporations § 360 *et seq.*
   51 Am Jur, Taxation §§ 839 *et seq.*, 862.
[2] 13 Am Jur 2d, Building and Construction Contracts §§ 130, 131.
   Validity, construction, and application of regulations of business of building or construction contractors.  118 ALR 676.
[3, 4] 33 Am Jur, Licenses §§ 68–74.
   Failure of artisan or construction contractor to procure occupational or business license or permit as affecting validity of enforceability of contract.  82 ALR2d 1429.

4. Same—Foreign Corporation—Residential Building Contractor
     —Recovery of Compensation.

> A foreign corporation which was not authorized to do business in
> this State was not entitled to recover compensation for services
> as a residential building contractor, where it did not obtain a
> valid license as such a contractor until after services were per-
> formed (CLS 1961, § 338.971 *et seq.*).

Appeal from Monroe; Weipert, Jr. (William J.),
J. Submitted June 3, 1964. (Calendar No. 13,
Docket No. 50,099.) Decided November 2, 1964.

Bill by Bilt-More Homes, Inc., an Ohio corpora-
tion, against Lowell and Marlene French and Peo-
ples Federal Savings & Loan Association, Inc., to
foreclose mechanic's lien. Bill dismissed on motion.
Plaintiff appeals. Affirmed.

*George W. Paxson, George H. Fell,* and *Lewis &
Watkins,* for plaintiff.

*Merman & Braunlich,* for defendants French.

Kelly, J. Plaintiff appeals from the order of the
circuit court granting the motion to dismiss made
by defendants Lowell and Marlene French.

On July 31, 1959, plaintiff, an Ohio corporation,
entered into a written contract with defendants
French to construct a residential building on realty
owned by said defendants and located in Monroe
county, Michigan. Thereafter, defendants French
executed a construction mortgage covering said
realty to defendant Peoples Federal Savings & Loan
Association, Inc., as mortgagee.

On September 22, 1959, the Michigan corporation
and securities commission, builders division, issued a
builder's license to plaintiff, who commenced per-
formance of the contract in October, 1959, and so
continued until June, 1960.

August 12, 1960, plaintiff filed a statement of lien against defendants French's realty, and, on the same date, August 12, 1960, plaintiff's builder's license was renewed.

On February 9, 1961, plaintiff brought suit against defendants to foreclose the lien against the realty owned by defendants French, or, in the alternative, for a money judgment against defendants French.

Subsequently, on February 24, 1961, plaintiff was notified by letter from the builders division of the Michigan corporation and securities commission that said division had just received information that plaintiff had not qualified as a foreign corporation to do business in Michigan, and, thus, the builder's licenses previously issued to plaintiff were null and void because issued in violation of PA 1953, No 208, § 6 (CLS 1961, § 338.976 [Stat Ann 1957 Rev § 18.86(6)]).

April 14, 1961, plaintiff obtained the required certificate of authority to do business from the Michigan corporation and securities commission and, on June 19, 1961, was issued another builder's license.

Defendants French on January 18, 1962, filed motion to dismiss plaintiff's bill of complaint, which motion was granted by order of July 27, 1962, on the grounds that plaintiff was not eligible to hold a builder's license pursuant to PA 1953, No 208, until it had been duly authorized to conduct business in the State of Michigan and, therefore, in accordance with section 16 of said act[1] was prohibited from bringing an action against defendants French, arising out of the contract dated July 31, 1959, and performed between October 12, 1959, and June 14, 1960.

In granting the motion to dismiss, the circuit court ruled that by the express terms of PA 1953, No

---

[1] CLS 1961, § 338.986 (Stat Ann 1957 Rev § 18.86[16]).

208, § 6,[2] plaintiff was disqualified from holding a legal builder's license until it had qualified as a foreign corporation to do business in Michigan, and, as a result of not being duly licensed, plaintiff could not bring or maintain any action against defendants.[3]

Plaintiff, on this appeal, argues that we are here concerned with a clear case of mistake on the part of plaintiff and the Michigan corporation and securities commission; that no fraud or misrepresentation is involved; that the Michigan corporation and securities commission having issued a builder's license to plaintiff had no authority to declare it void from its inception but could only suspend or revoke it; that, therefore, the license was only voidable and not void; that since the defendants did not attempt to have the contract set aside and the Michigan corporation and securities commission did not suspend or revoke the builder's license before June, 1960, plaintiff concludes that it is thereby entitled to maintain a cause of action to enforce the contract.

This is the first time such a factual situation as is involved in this appeal has arisen under the residential building contractors' licensing statute (PA 1953, No 208). Our decision in *Alexander* v. *Neal*, 364 Mich 485, is important in reaching a decision in this appeal, but it differs from the present facts

[2] CLS 1961, § 338.976 (Stat Ann 1957 Rev § 18.86[6]), provides: "A nonresident of this State may become a residential builder and/or a residential maintenance and alteration contractor by conforming with the conditions of this act: Provided, however, That no license shall be issued to any foreign corporation until such corporation has been duly authorized to do business in the State of Michigan by the Michigan corporation and securities commission."

[3] CLS 1961, § 338.986 (Stat Ann 1957 Rev § 18.86[16]), provides: in part: "No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under this act at all times during the performance of such act or contract."

because in *Alexander* the plaintiff builder had not secured any license in fact.

We are affirming and, as our reasons for sustaining the trial court, we quote the following from the well-prepared ruling of the Hon. William J. Weipert, Jr., circuit judge, on motion to dismiss:

"Not being licensed to do business in the State prior to April 14, 1961, plaintiff obviously could not qualify for a residential builder's license. The builders division of the Michigan corporation and securities commission was wholly without discretion in issuing it a license as a residential builder; authority to do so was specifically withheld until after the foreign corporation was authorized to do business in the State of Michigan.

"It appears that plaintiff agreed with the corporation and securities commission's action in holding the so-called license null and void, rather than a colorable license requiring revoking. Plaintiff did not protest or appeal such notification, but instead proceeded to qualify as a foreign corporation. Thereafter, over 2 months after the instant suit was filed, plaintiff for the first time became 'duly licensed' under the residential builder's statute—something which the statute says any suitor in this State must be, before seeking the court's aid in 'the collection of compensation for the performance of any act or contract for which a license is required.' This is the language of the statute itself—which goes on to state that such plaintiff must be 'duly licensed' * * * *'at all times during the performance of such act or contract.'* [CLS 1961, § 338.971 *et seq.* (Stat Ann 1957 Rev and Stat Ann 1963 Cum Supp § 18.86[1] *et seq.*).] (Emphasis supplied.)

"The question before the court is whether this rather explicit statutory language means what it purports to say, or something else. The greater part of the elaborate briefs, at least plaintiff's, deal with the foreign corporation aspect of the questions presented. Little is cited of the rather abundant

case law of this country dealing with the builder's license aspect, which the court considers the more pertinent of the 2 questions. If, indeed, Michigan had no builder's license statute, and the sole question were the effect of plaintiff's nonqualification to do business in this State until after suit was filed, plaintiff's position would be much more tenable. There is, however, no need to cite here the numerous cases holding that noncompliance with the doing-business-in-the-State statute in various situations may make contracts voidable rather than void. We have before us, however, a contract made not only in violation of the nonqualified corporation statute, but as well of a licensing statute expressly enacted under the police power to protect the public. As recently as 1961 our Supreme Court has construed the latter as voiding contracts made without compliance; *Alexander* v. *Neal,* 364 Mich 485.

"Such licensing statutes, Justice TALBOT SMITH observed, are commonplace in this country. In the absence of other authority than *Alexander* v. *Neal* in this State it is pertinent to inquire into the construction they have received elsewhere. Independent research reveals much authority to the same effect. The majority of courts considering the question have held that when the licensing statute requires that in order to maintain an action for the collection of compensation the artisan or contractor must allege and prove that he was duly licensed at the time the cause of action arose, or at all times during the performance of the contract, an artisan or contractor who was not *duly licensed at the time specified in the statute* or whose license had expired or been revoked prior to such time, cannot enforce his contract regardless of whether he became properly licensed subsequent to such time. The same principle has been recognized where the statute, although not containing express provisions pertaining to the enforceability of contracts of unlicensed persons, was construed to be a police measure and the artisan or contractor was not properly licensed

at the time the contract was entered into. See extensive recent annotation on the subject appearing at 82 ALR2d 1429–1468. No cause of action arises from such contracts, as the New Mexico court says and numerous cases in California and other jurisdictions.

"The Michigan Supreme Court is not alone, then, in distinguishing between licensing statutes embodying strong public policy, as the statute under construction, and statutes regulating the qualification of foreign corporations. Our statute in the former category expressly warns those who undertake residential building that they cannot either 'bring,' or, having brought, 'maintain *any* action in any court of this State' without proving themselves '*duly licensed * * * at all times* during the performance.' The Supreme Court says that contracts by a residential builder not duly licensed are not only voidable but void—and it is not for a trial court to begin the process of attrition whereby, in appealing cases, the statutory bite is made more gentle, until eventually the statute is made practically innocuous and the teeth of the strong legislative policy effectively pulled. If cases of such strong equities eventually arise that the statute does more harm than good the legislature may amend it, or the Supreme Court, in far better position than courts of first instance to read implied exceptions between the lines, may correct it not only prospectively but *nunc pro tunc.*

"Plaintiff's strongest argument is not so much, in the court's opinion, its belated action in obtaining a valid license, as the fact that it *did* have what purported to be a license. Even this, however, it did not possess when it undertook to negotiate and execute the building contract in question. That fact alone might well be considered fatal to plaintiff's position in view of the statutory requirement that it be 'duly licensed * * * 'at *all* times.' But at *no time,* until after filing suit, did plaintiff ever have more than a piece of paper which plaintiff itself

(not the corporation and securities commission) prevented from being more than that by its elemental failure to qualify to do business at all in Michigan. Although a certain sympathy for its misfortune naturally arises, we are not dealing with widows and orphans—and even there hard cases make bad law.

"In fact, before the court could even be in position to know how well or little plaintiff corporation deserved sympathy—and whether its failure to follow Michigan builder's law was wholly technical and innocent—it would be necessary, since other defenses are pleaded by defendants, to hear the whole case. That would be of course to dilute the statute still more, requiring the parties supposedly protected by the law to go to the expense of full litigation before it could be known if such protection against unlicensed builders amounted to anything."

Affirmed. Costs to appellees.

KAVANAGH, C. J., and DETHMERS, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.