MICHIGAN ROOFING & SHEET METAL, INC v DUFTY ROAD
PROPERTIES

Docket No. 77-4757. Submitted February 7, 1979, at Detroit.—Decided
June 19, 1979. Leave to appeal applied for.

On March 17, 1972, defendant John Casey Development Company, a general contractor, conducted, through a subcontractor, soil borings on a certain property owned by defendant Dufty Road Properties. At the time Casey was not a licensed residential builder under the residential builders act but became one prior to entering into a construction contract with Dufty on April 1, 1972, and remained one throughout the construction. On May 2, 1972, after the construction contract had been signed, the engineering plans completed and demolition of existing buildings begun, Dufty gave to Continental Mortgage Investors (CMI) a mortgage, which was recorded on May 26, 1972. On October 8, 1975, Casey recorded a statement of account and lien pursuant to the mechanic's lien law. When suit was filed by Michigan Roofing & Sheet Metal, Inc., another mechanic's lien holder, to foreclose its lien, Casey cross-claimed against Dufty, CMI and the other interest holders of record to foreclose its lien. The Oakland Circuit Court, Robert B. Webster, J., granted summary judgment in favor of CMI and against Casey. Casey appeals and CMI cross-appeals from the court's prior opinion that the word "improvement" in the statute establishing priorities for mechanic's liens encompasses the preparation of engineering plans. Held:

1. The purpose of the residential builders act is to protect home-owners from incompetent, inexperienced and fly-by-night contractors. A general contractor is not precluded from suing upon a mechanic's lien for literal failure to comply with the residential builders act requirement that the contractor be licensed at all times during the construction where the contractor has substantially complied and where such substantial

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 13 Am Jur 2d, Building and Construction Contracts § 130.
   53 Am Jur 2d, Mechanics' Liens § 168.
[2] 53 Am Jur 2d, Mechanics' Liens § 268.

compliance has afforded the protection contemplated by the statute.

2. A general contractor's mechanic's lien takes preference over a mortgage given and recorded after the general contractor renders engineering services which are "improvements" within the meaning of the mechanic's lien statute.

Reversed and remanded.

DANHOF, C.J., dissented. He would hold that the residential builders act requires a contractor to have been licensed at all times during the construction in order to maintain a suit on a mechanic's lien. He would affirm.

### OPINION OF THE COURT

1. MECHANIC'S LIEN — LICENSED BUILDER — STATUTES — SUBSTANTIAL COMPLIANCE.

A general contractor is not precluded form suing upon a mechanic's lien for literal failure to comply with the residential builders act requirement that the contractor be licensed at all times during the construction where the contractor has substantially complied and where such substantial compliance has afforded the protection contemplated by the statute; the purpose of the residential builders act is to protect homeowners from incompetent, inexperienced and fly-by-night contractors (MCL 338.1516; MSA 18.86[116]).

2. MECHANIC'S LIEN — PRIORITIES — IMPROVEMENTS — SOIL BORINGS — STATUTES.

A general contractor's mechanic's lien takes preference over a mortgage given and recorded after the general contractor renders engineering services, which are "improvements" within the meaning of the mechanic's lien statute (MCL 570.9; MSA 26.289).

### DISSENT BY DANHOF, C.J.

3. MECHANIC'S LIEN — LICENSED BUILDER — STATUTES — SUBSTANTIAL COMPLIANCE.

*A general contractor is precluded by statute from maintaining a suit on a mechanics' lien where he was not licensed at all times during the construction; substantial compliance is insufficient (MCL 570.9; MSA 26.289).*

*Schlussel, Lifton, Simon, Ranos, Kaufman, Lesinski & Jackier* (by *Donald B. Lifton* and *Douglas*

*E. Busbey),* for defendant John Casey Development Company.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Stephen E. Dawson* and *Terence M. Donnelly),* for defendant Continental Mortgage Investors.

Before: DANHOF, C.J., and BRONSON and BEAS-LEY, JJ.

BRONSON, J. This case involves the interpretation to be given the residential builders act, MCL 338.1501 *et seq.;* MSA 18.86(101) *et seq.*

On March 17, 1972, John Casey Development Company, a general contractor, through Michigan Drilling, a subcontractor, conducted soil borings on a certain site owned by Dufty Road Properties to determine if the site was suitable for construction. At the time the soil borings were conducted, Casey had not yet obtained a residential builder's license. Casey did, however, obtain such a license prior to the time it formally executed the construction contract with Dufty on April 1, 1972, and Casey remained licensed throughout the remainder of the construction project which it worked on until July 21, 1975.

After the construction contract had been signed, the engineering plans completed and demolition of existing structures on the property commenced, Dufty executed a construction loan agreement with Continental Mortgage Investors (C.M.I.). This mortgage was recorded by C.M.I. on May 26, 1972. Appellant alleged that during the construction project C.M.I. ran into financial difficulties which caused it to fail to disburse funds in accordance with the terms of the loan agreement, and finally stopped performance of the agreement altogether and filed for bankruptcy.

On October 8, 1975, Casey recorded a statement of account and lien pursuant to the mechanics lien act, MCL 570.1 *et seq.;* MSA 26.281 *et seq.,* but failed to attach to this statement proof that it had served notice on the owner of its intention to claim a lien.

Casey then commenced this present suit[1] to foreclose on its mechanic's lien. C.M.I. opposed the foreclosure and moved for summary judgment on the ground that Casey's lien was unenforceable because Casey had not complied with the residential builders act or in the alternative C.M.I. had a prior mortgage which superseded the lien. The trial court granted C.M.I.'s motion for summary judgment on both grounds.

In reviewing the question concerning the residential builders act, the circuit court held that since soil borings had been conducted before Casey was licensed, Casey was not licensed at all times during the performance of the contract and thus under MCL 338.1516; MSA 18.86(116) Casey was precluded from maintaining the present action. We agree with the trial court that there was not literal compliance with the statute. We do not agree, however, that the insignificant variance represented in this case precludes Casey from maintaining the present action. In so holding, we adopt the California test of substantial compliance.[2]

"Although plaintiff thus failed literally to conform to

[1] The present action is just one claim in a complex suit involving Casey, Dufty, C.M.I., and various subcontractors, laborers and materialmen.

[2] Our review of prior case law in Michigan has turned up no cases in which the doctrine of substantial compliance has been applied. However, we also found no cases where it has specifically been rejected. Therefore the question is still open in this state and we are free to look to our sister states for guidance.

the commands of section 7031 of the Business and Professions Code,[3] the courts of this state have not insisted upon such strict observance if it would transform the statute into an 'unwarranted shield for the avoidance of a just obligation.' *(Gatti v. Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, 690 [166 P.2d 265].) If the facts clearly indicate that the contractor has 'substantially' complied with the statute and that such compliance has afforded to the obligor the protection contemplated by the statute, we have rejected the obligor's attempt to escape liability."

*Latipac, Inc v The Superior Court of Marin County,* 64 Cal 2d 278, 281; 49 Cal Rptr 676; 411 P2d 564 (1966), accord, *Vitek, Inc v Alvarado Ice Palace, Inc,* 34 Cal App 3d 586; 110 Cal Rptr 86 (1973), *Lewis v Arboles Development Co,* 8 Cal App 3d 812; 87 Cal Rptr 539 (1970), *Elster's Sales v Longo,* 4 Cal App 3d 216; 84 Cal Rptr 83 (1970).

In the present case, Casey served as general contractor on the construction project for over 40 months, during which time it was unlicensed for a total of 13 days. When viewed in relation to the total time of performance, the length of time that

---

[3] The California provision prohibiting unlicensed builders from bringing or maintaining suit is almost exactly identical to the Michigan provision. Compare California Business and Professions Code, § 7031:

"No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract * * *."
with MCL 338.1516; MSA 18.86(116):

"No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under this act at all times during the performance of such act or contract * * *."

Casey was unlicensed was insignificant. Moreover, Casey did in fact possess a valid license at the time he executed the construction contract with Dufty. Also, there is no indication in the record that the reason 'for the 13-day period was because Casey was not qualified to obtain a license. Finally, there is no proof that Casey was not a competent and responsible contractor throughout the term of the contract. This being the case, the criteria set forth in *Latipac*[4] for invocation of the substantial compliance doctrine have been satisfied, and Casey is not precluded from maintaining the present action.

The residential builders act is a prophylactic measure designed for the protection of homeowners "from incompetent, inexperienced and fly-by-night contractors". *Alexander v Neal,* 364 Mich 485, 487; 110 NW2d 797 (1961). See MCL 338.1501; MSA 18.86(101). It was not intended to be a device whereby persons could be relieved from paying their legitimate obligations. Adoption of the substantial compliance test fully protects homeowners thereby fulfilling the purpose of the act, without saddling contractors with oppressive and total forfeitures for trivial and inconsequential deficiencies, forfeitures we might add that will eventually have to be made up by subsequent homebuyers. The principles expressed by the California Court of Appeals in *Vitek, supra,* apply equally as well to the case at bar.

---

[4] In *Latipac,* the California Supreme Court set forth three criteria it used to determine whether the residential builder had substantially complied with the Residential Builders Act: 1) did the builder hold a valid license at the date the construction contract was executed, 2) during the time the builder did not possess a license, was the reason for the nonpossession because the builder was not qualified to hold a license, and 3) was the competence of the corporation's officer who qualified for the license confirmed throughout the existence of the contract? *Latipac, supra.*

"We are not involved in aiding an incompetent or dishonest artisan. Nor can it be seriously argued that the statutory purposes of public protection would be frustrated by allowing enforcement of a contract fully performed by a licensed contractor whose qualifications for a license were unquestioned and whose only disability was signing the contract one business day before the license was issued. The defendant received full value under the terms of the contract. The licensing law should not be used as a shield for the avoidance of a just obligation. * * * The contract must be upheld." (Citation omitted.) *Vitek, supra,* 594-595.

The second question on appeal is whether C.M.I. had a prior recorded mortgage which superseded Casey's mechanic's lien. Relying on *Burton Drywall, Inc v Kaufman,* 69 Mich App 85; 244 NW2d 367 (1976), the circuit court held that Casey's failure to prove that it had served notice on Dufty of its intention to claim a mechanic's lien precluded it from establishing a valid mechanic's lien and therefore C.M.I.'s mortgage took precedence. *Burton,* however, was reversed by the Supreme Court[5] and C.M.I. concedes that the reversal answers the notice question adversely to it, and therefore even if Casey did not serve the owner with its intention to claim a lien Casey may still have a valid mechanic's lien.

Nevertheless, on cross-appeal, C.M.I. contends that even though Casey's mechanic's lien may be valid, it is still superseded by C.M.I.'s mortgage because the mortgage was recorded prior to the time Casey commenced construction on the project.

MCL 570.9; MSA 26.289 states that mechanic's liens shall take preference over any other encumbrance "given or recorded subsequent to the com-

---

[5] *Burton Drywall v Kaufman,* 402 Mich 366; 263 NW2d 249 (1978).

mencement of said building, or buildings, erection, structure or *improvement*". (Emphasis added.) The act also defines *improvement* as the furnishing of engineering services. MCL 570.1; MSA 26.281. Since engineering services were performed prior to the giving or recording of C.M.I.'s mortgage, Casey's lien takes precedence. *Williams & Works, Inc v Springfield Corp,* 81 Mich App 355, 362-363; 265 NW2d 328 (1977).

The trial court's order granting C.M.I.'s motion for summary judgment is reversed, and the case is remanded for further proceedings.

Reversed.

BEASLEY, J., concurred.

DANHOF, C.J. *(dissenting).* I dissent.

*Latipac* does not support the majority's finding of substantial compliance in this case. As the majority acknowledges, the finding of substantial compliance in *Latipac* was based on three criteria. One criterion was that the contractor's qualifications as a licensee had been "officially confirmed" throughout the period of contract performance. A careful reading of the dissent in *Latipac* shows the Court's reliance on this criterion was a slight extension of California law and was crucial to the decision.

In the present case the contractor seeking recovery has not shown that its qualifications were "officially confirmed" throughout the period of performance of the contract. The majority has not found otherwise. Although the majority concludes the *Latipac* test has been met in this case, its conclusion is based on the reason "there is no proof that Casey was not a competent and responsible contractor throughout the term of the contract". This reasoning confuses "license" and "offi-

cial confirmation" with "qualification in fact". In reality the majority's ruling today is much broader than the holding in *Latipac.*

The majority's extension of *Latipac* is contrary to the clear language of the residential builders act. The majority justifies this extension by reasoning the purposes of the residential builders act will not be served by exacting a forfeiture from the contractor in this case. These matters, however, may not be considered in an action barred by the clear language of the licensing act. Justice Mosk made this point well in his *Latipac* dissent. Regarding the California Contractors Licensing Law, he wrote:

" 'In each * * * case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. [Citations.] *But we are not free to weigh these considerations in the present case. Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracing business outweighs any harshness between the parties,* and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state [citation].' (Italics added.)" 64 Cal 2d 278, 289 *quoting, Lewis & Queen v N M Ball Sons,* 48 Cal 2d 141, 150-151; 308 P2d 713 (1957).

Prior Michigan cases are in accord with Justice Mosk's position. See *e.g., Bilt-More Homes, Inc v French,* 373 Mich 693; 130 NW2d 907 (1964), *Chilson v Clevenger,* 12 Mich App 56; 162 NW2d 303 (1968).

While I am sympathetic in this case to the equitable claims of the contractor and to the policy concerns of the majority, I believe such claims should be addressed to the Legislature.