MICHIGAN ROOFING & SHEET METAL, INC v DUFTY ROAD
PROPERTIES (ON REMAND)

Docket No. 53049. Submitted August 8, 1980, at Lansing.—Decided
October 7, 1980. Leave to appeal applied for.

On March 17, 1972, appellant, John Casey Development Company
(Casey), a general contractor, conducted, through a subcontrac-
tor, soil borings on a certain property owned by Dufty Road
Properties (Dufty). At the time, Casey was not a licensed
residential builder under the residential builders' act, but did
become one prior to entering into a construction contract with
Dufty on April 1, 1972, and remained one throughout the
construction. On May 2, 1972, after the construction contract
had been signed, the engineering plans completed, and demoli-
tion of existing buildings begun, Dufty gave to appellee, Conti-
nental Mortgage Investors (CMI), a mortgage, which was re-
corded on May 26, 1972. On October 8, 1975, Casey recorded a
statement of account and lien pursuant to the mechanics' lien
law. When suit was filed against Dufty by Michigan Roofing &
Sheet Metal, Inc., another mechanics' lien holder, to foreclose
its lien, Casey cross-claimed against Dufty, CMI, and the other
interest holders of record to foreclose its lien. The Oakland
Circuit Court, Robert B. Webster, J., granted summary judg-
ment in favor of CMI and against Casey. Casey appealed and
the decision was reversed, the Court of Appeals (DANHOF, C.J.,
dissenting) holding that Casey's substantial compliance with
the provision of the residential builders' act was sufficient to
allow maintenance of an action to foreclose the lien. On the
issue of priority, the majority held that because engineering
services were performed prior to the giving or recording of the
mortgage, the lien took preference. CMI sought leave to appeal
to the Supreme Court, which ordered the application held in
abeyance pending decision by that Court of *Williams & Works,*

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 53 Am Jur 2d, Mechanics' Liens § 268.

[2-5] 53 Am Jur 2d, Mechanics' Liens § 249.

[4] Delivery of material to building site as sustaining mechanic's lien.
39 ALR2d 394.

[6] 13 Am Jur 2d, Building and Construction Contracts § 130.

*Inc v Springfield Corp,* 408 Mich 732; 293 NW2d 304 (1980). The instant case has now been remanded for reconsideration in light of the *Williams & Works* case, 409 Mich 887 (1980). *Williams & Works* was concerned only with the question of priorities. Therefore, it does not affect the earlier holding of the Court of Appeals on the sufficiency of Casey's compliance with the residential builders' act. The only issue now on appeal is whether sufficient visible on-site construction had taken place prior to CMI's mortgage so that the mechanics' lien would take priority. *Held:*

Labor and construction materials were furnished to the construction site prior to the time that CMI's mortgage was granted. Michigan case law holds that the furnishing of construction materials to a jobsite is sufficient to constitute a commencement of a building, erection, structure or improvement and to place potential lenders or purchasers on constructive notice that mechanics' liens may exist. The delivery of construction materials preceded the giving and recording of the mortgage, therefore, the lien takes priority over the mortgage.

Reversed and remanded.

DANHOF, C.J. dissented. He would hold that the residential builders' act requires a contractor to have been licensed at all times during the statutory period for establishing a lien in order to maintain a suit on a mechanics' lien. He would affirm.

OPINION OF THE COURT

1. MECHANICS' LIENS — MORTGAGES — PRIORITY — COMMENCEMENT OF CONSTRUCTION.

    A mechanics' lien does not take priority over a mortgage, regardless of when the lienable act is actually performed, unless visible, on-site construction which could be said to signal the commencement of a building, erection, structure, or improvement has taken place.

2. MECHANICS' LIENS — MORTGAGES — PURCHASERS OF REAL ESTATE — PRIORITY — VISIBLE COMMENCEMENT OF CONSTRUCTION — CONSTRUCTIVE NOTICE.

    The purpose of the visible commencement requirement before a mechanics' lien will be given precedence over a mortgage or a purchaser is to place potential lenders or purchasers on constructive notice that mechanics' liens may exist.

3. MECHANICS' LIENS — COMMENCEMENT OF CONSTRUCTION.

    *"Commencement"* of construction, for purposes of the mechanics' lien law, means visible, on-site construction such that it is

obvious from the work done on the premises that a building, erection, structure or improvement is in progress.

4. MECHANICS' LIENS — FURNISHING OF CONSTRUCTION MATERIALS — COMMENCEMENT OF CONSTRUCTION.

The furnishing of construction materials to a jobsite is sufficient to constitute a commencement of construction for purposes of the mechanics' lien law; thus the general rule is that a mechanics' lien does not attach unless and until construction has been undertaken by the doing of actual visible work on the land or the delivery of construction materials thereto.

5. MECHANICS' LIENS — MORTGAGES — DELIVERY OF CONSTRUCTION MATERIALS — PRIORITY.

A general contractor's mechanics' lien on a building, erection, structure, or improvement will take priority over a mortgage where delivery of construction materials to the jobsite preceded the giving and recording of the mortgage.

DISSENT BY DANHOF, C.J.

6. MECHANICS' LIENS — LICENSED BUILDER — STATUTES — SUBSTANTIAL COMPLIANCE.

*A general contractor is precluded by statute from maintaining a suit on a mechanics' lien where he was not licensed at all times during the period for establishing a lien and the construction; substantial compliance is insufficient (MCL 570.9; MSA 26.289).*

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Steven E. Dawson),* for Continental Mortgage Investors.

*Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackier* (by *Donald B. Lifton* and *Douglas E. Busbey),* for John Casey Development Company.

Before: DANHOF, C.J., and BRONSON and BEASLEY, JJ.

BRONSON, J. This action presents one claim in a complex suit involving the Woodvale Condominium Project in Southfield, Michigan. John Casey Development Company (Casey), the general contractor, sought to foreclose on its mechanics' lien.

Continental Mortgage Investors (C.M.I.) opposed foreclosure on the ground that Casey's lien was unenforceable for failure to comply with the residential builders' act,[1] or, in the alternative, that C.M.I. had a prior mortgage which superseded the lien. The matter was heard on cross-motions for summary judgment, and the trial court granted summary judgment for C.M.I.

The matter was appealed to this Court, where a majority held (Chief Judge DANHOF dissenting) that Casey's substantial compliance with the provisions of the residential builders' act was sufficient to allow maintenance of an action to foreclose the lien. On the priority issue, the majority held that because engineering services were performed prior to the giving or recording of the mortgage, the lien took preference under MCL 570.9; MSA 26.289, MCL 570.1; MSA 26.281, as construed in *Williams & Works, Inc v Springfield Corp,* 81 Mich App 355, 362-363; 265 NW2d 328 (1978). *Michigan Roofing & Sheet Metal, Inc v Dufty Road Properties,* 90 Mich App 732; 282 NW2d 809 (1979).

C.M.I. sought leave to appeal to the Supreme Court, which ordered the application held in abeyance pending decision by that Court in the *Williams & Works* case. *Williams & Works* was recently decided by the Supreme Court, 408 Mich 732; 293 NW2d 304 (1980), and the instant case has since been remanded for reconsideration in light of that case.

*Williams & Works* was concerned with:

"[T]he sole question whether off-site engineering services rendered before the beginning of actual, on-site construction qualify, pursuant to § 9(3) of the Michigan mechanics' lien law, as 'the commencement of said

---

[1] MCL 338.1501 *et seq.;* MSA 18.86(101) *et seq.*

building or buildings, erection, structure or improve-ment' so as to give priority to mechanics' liens over a mortgage recorded after the provision of such services but prior to the beginning of any visible, on-site con-struction". *Id.,* 734-735, (footnotes omitted).

It thus appears that the Supreme Court's remand affects only our holding on the priority issue, and we expressly reaffirm our prior holding on the issue of the sufficiency of Casey's compliance with the residential builders' act.

In *Williams & Works* the Supreme Court held, after extensive review of the mechanics' lien act and prior case law, that regardless of when a lienable act was actually performed the lien does not take priority over a mortgage unless visible, on-site construction which could be said to signal the "commencement" of the building, erection, structure, or improvement has taken place. See MCL 570.9 (third); MSA 26.289 (third). The pur-pose of the visible commencement requirement is to place potential lenders or purchasers on con-structive notice that mechanics' liens may exist. The Supreme Court was of the opinion that this purpose would be defeated if mechanics' liens were granted priority as of the date of lienable but off-site services such as the rendering of engineering plans.

"We also believe that our decision, in continuing to key 'commencement' into the concept of constructive notice, is based on sound public policy. Were we to adopt appellees' position and rule that the 'commence-ment' of a building, erection, structure or improvement could be triggered by the rendering of off-site, non-visible engineering plans, mechanics' liens could relate back to a long time before any visible signs of construc-

tion existed to inform prospective lenders inspecting the premises that liens had attached. Under such circumstances, construction financing would become exceedingly difficult." *Williams & Works, Inc, supra,* 751.

One Michigan commentator has reconstructed the policy considerations behind selection of the date of visible "commencement" as the date for fixing priorities in the following manner:

"But *what* date? That is a critical question for outsiders,—for example, the bank which lent money on mortgage of this land prior to the completion of the building. Here our lawmakers have split. Most of them have given all contractors, laborers and materialmen liens which relate back to the time the job was begun by visible operations on the land. The rationale is found in certain policy factors. A lien having priority as of a later date would give no assurance to one who was asked to furnish labor or materials at the beginning of the job. Do we want to impose that risk upon them, or repair the 'owner's' credit facilities to the extent that they refuse to assume that risk? On the other hand, a lien as of an earlier date would be a wallop for anyone who had dealt with the 'owner' on the faith of his title, as yet unencumbered but later subjected to the antedated lien. To give the lien priority as of the date when visible operations began is stiff, but we can at least say that it was possible for anyone dealing with the 'owner' to see the operations, and so to understand what was likely to ensue, assuming knowledge of the law. It should be added that prudence requires inspection of the land in any case, by reason of the doctrine of notice from possession. So, by a process of elimination, we come to the date of visible operations. Other statutes, however, have ignored the notice point, and date the liens from the execution of the 'owner's' contract, without requiring the contract to be recorded. Apparently there is no way to guard one's self against the hazard

created by that type of statute." Durfee, *Priorities,* 57
Mich L Rev 459, 476-477 (1959).[2]

· The question that remains is just what sort of
activity is sufficient to signal commencement. Al-
though the Supreme Court declined to intimate a
specific view on this point, *Williams & Works,
supra,* 754, fn 13, guidelines were offered:

" 'Commencement', then, as defined by early case law
and commentary, required an act of such a character
that it was notice to all of the existence of mechanics'
liens." *Id.,* 742.

"In short, visible, on-site construction, such that it is
obvious from the work done on the premises that a
building, erection, structure or improvement is in prog-
ress, is still required in order to signal 'commence-
ment'." *Id.,* 749. (Footnote omitted.)

Resolution of the instant case depends on whether
sufficient visible on-site construction had taken
place prior to the mortgage so that the mechanics'
lien would take priority. If not, the mortgage
would supersede the lien and the trial court would
have been correct in granting summary judgment
to C.M.I.

The record in the instant case reveals that
C.M.I.'s mortgage was granted on May 2, 1972, and
recorded on May 26, 1972. Prior to this time, at

---

[2] Although the purpose of selecting the date of commencement as
the date for fixing priorities appears designed to give constructive
notice to lenders and purchasers of the potential existence of mechan-
ics' liens, the Supreme Court, perhaps curiously, rejected the argu-
ment that a mortgagee's actual notice of the prior performance of
lienable services was sufficient to accord priority to the lien. *Williams
& Works, Inc v Sprinfield Corp,* 408 Mich 753-754. This rejection
seems to be based on the statutory language and longstanding judicial
construction requiring a "commencement", leading to reliance by
lenders on the date of commencement as the date for fixing priorities
regardless of the reasons for selecting that date.

least by March 17, 1972, labor and construction materials were furnished to the construction site. Although there appears to be a split of opinion in this country over whether such acts are sufficient to signal commencement, Anno: *What constitutes "commencement of building or improvement" for purposes of determining accrual of mechanics' lien,* 1 ALR3d 822, 835-836, Michigan case law holds that the furnishing of construction materials to the jobsite is sufficient to constitute a commencement.[3] *Williams & Works, Inc v Springfield Corp,* 76 Mich App 541, 550; 257 NW2d 160 (1977), *lv den* 402 Mich 908 (1978). See *Wallich Lumber Co v Golds,* 375 Mich 323; 134 NW2d 722 (1965). This position has been adopted by other states as well. A unanimous California Supreme Court stated the general rule as follows:

" 'Thus the general rule is that such a lien does not attach unless and until *construction* has been undertaken by the doing of actual visible work on the land or the delivery of construction materials thereto.' " *Walker v Lytton Savings & Loan Ass'n of Northern California,* 2 Cal 3d 152, 156-157; 84 Cal Rptr 521; 465 P2d 497 (1970) (emphasis in original), quoted in *Williams & Works, Inc v Springfield Corp,* 408 Mich 750-752.

---

[3] At least two other sorts of on-site work occurred prior to the giving and recording of the mortgage. Beginning on March 7, 1972, soil borings were conducted by Michigan Drilling, a subcontractor. The Supreme Court, however, has held that such activity is insufficient to signal commencement. *Williams & Works, Inc v Springfield Corp,* 408 Mich 735, fn 2. In addition, on April 13, 14, 16, and 17, 1972, demolition of existing structures on the construction site was accomplished by another subcontractor. There is a split of authority over the question whether such demolition constitutes a commencement, Anno: *What constitutes "commencement of building or improvement" for purposes of determining accrual of mechanics' lien,* 1 ALR3d 822, 828-829, but no Michigan cases have yet addressed this issue. Because we hold, based on existing Michigan authority, that the delivery of construction materials is a sufficient commencement, there is no need to address the question of whether demolition would also be sufficient.

We also believe that the delivery of construction materials to the jobsite satisfies the guidelines of the Supreme Court's decision in *Williams & Works.* When construction materials are visible on a jobsite, it is obvious that a building, erection, structure, or improvement is in progress so that all who happen by the site have constructive notice of the existence of mechanics' liens.

Because the delivery of construction material preceded the giving and recording of the mortgage, the liens take priority over the mortgage. The trial court's grant of summary judgment in favor of C.M.I. is reversed, and the case remanded for further proceedings.

Reversed.

BEASLEY, J., concurred.

DANHOF, C.J., *(dissenting).* I dissent.

*Latipac [Latipac, Inc v The Superior Court of Marin County,* 64 Cal 2d 278; 411 P2d 564 (1966)] does not support the majority's finding of substantial compliance in this case. As the majority acknowledges, the finding of substantial compliance in *Latipac* was based on three criteria. One criterion was that the contractor's qualifications as a licensee had been "officially confirmed" throughout the period of contract performance. A careful reading of the dissent in *Latipac* shows the Court's reliance on this criterion was a slight extension of California law and was crucial to the decision.

In the present case the contractor seeking recovery has not shown that its qualifications were "officially confirmed" throughout the period of performance of the contract. The majority has not found otherwise. Although the majority concludes the *Latipac* test has been met in this case, its conclusion is based on the reason that "there is no

proof that Casey was not a competent and responsible contractor throughout the term of the contract". This reasoning confuses "license" and "official confirmation" with "qualification in fact". In reality the majority's ruling today is much broader than the holding in *Latipac.*

The majority's extension of *Latipac* is contrary to the clear language of the residential builders act. The majority justifies this extension by reasoning that the purposes of the residential builders' act will not be served by exacting a forfeiture from the contractor in this case. These matters, however, may not be considered in an action barred by the clear language of the licensing act. Justice Mosk made this point well in his *Latipac* dissent. Regarding the California Contractors Licensing Law, he wrote:

" 'In each \* \* \* case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. [Citations.] *But we are not free to weigh these considerations in the present case. Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties,* and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state [citation].' (Italics added.)" 64 Cal 2d 278, 289 quoting *Lewis & Queen v N M Ball Sons,* 48 Cal 2d 141, 151; 308 P2d 713 (1957).

Prior Michigan cases are in accord with Justice Mosk's position. See, *e.g., Bilt-More Homes, Inc v French,* 373 Mich 693; 130 NW2d 907 (1964), and *Chilson v Clevenger,* 12 Mich App 56; 162 NW2d 303 (1968).

While I am sympathetic in this case to the equitable claims of the contractor and to the policy concerns of the majority, I believe such claims should be addressed to the Legislature.