Joseph LePORE, an individual, and Great Lakes Glass, Inc., Plaintiffs,

v.

PARKER–WOODWARD CORPORATION a/k/a Woodward–Parker Corporation, Rayco Group, Petersen Construction and Development, Inc., Rayco Group and Petersen Construction, a Joint Venture, Resolution Trust Corporation, as Receiver of New Guaranty Federal Savings and Loan Association, Bill Karl's Landscape Cont., Fantin Enterprises, Inc., Smith & Smith Associates, W.J. Stewart Contracting Corp., Bob Henderson Contractors, Tri–County Builder's Hardware Co., H.L. Claeys & Co., Riesch Floor Ceiling and Partition, Asphalt Specialists/Asphalt Renovations, Zilka Heating & Cooling, Inc., Gary's Electric Service Company, Pete's Painting, Northwest Propane, Inc., jointly and severally, Defendants.

LAKESIDE FLOOR CORPORATION, Cross–Plaintiff,

v.

PARKER–WOODWARD CORPORATION a/k/a Woodward–Parker Corporation, Rayco Group, Petersen Construction and Development, Inc., Rayco Group and Petersen Construction, a Joint Venture, Resolution Trust Corporation, as Receiver of New Guaranty Federal Savings and Loan Association, Bill Karl's Landscape Cont., Fantin Enterprises, Inc., Smith & Smith Associates, W.J. Stewart Contracting Corp., Bob Henderson Contractors, Tri–County Builder's Hardware Co., H.L. Claeys & Co., Riesch Floor Ceiling and Partition, Asphalt Specialists/Asphalt Renovations, Zilka Heating & Cooling, Inc., Gary's Electric Service Company, Pete's Painting, Northwest Propane, Inc., jointly and severally, Cross–Plaintiffs.

WOODWARD–PARKER CORPORATION, Plaintiff,

v.

Raymond J. HUSIC, Carl Petersen, and Rayco/Petersen Group Construction, a joint venture, jointly and severally, Defendants.

RAYCO/PETERSEN GROUP CONSTRUCTION, Counterplaintiff,

v.

WOODWARD–PARKER CORPORATION, Counter-defendant.

RAYCO/PETERSEN GROUP CONSTRUCTION, Thirdparty Plaintiff,

v.

H. Wallace PARKER; Patricia W. Parker, Tri–County Builders Hardware Company, H.L. Claeys Company, Riesch Floor Covering, Lakeside Floor, Pontiac Ceiling Partitioning Company, Asphalt Specialists, Inc., Zilka Heating, Gary's Elec-

tric, Pete's Painting, Bill Karl's Landscaping, Fantin Enterprises, Inc., Smith & Smith Associates Architects, Bob Henderson Construction, Northwest Propane, W.J. Stewart Contract Corporation, and Resolution Trust Corporation, as Receiver of New Guaranty Federal Savings and Loan Association, Third-party Defendants.

LAKESIDE FLOOR CORPORATION,
Third-party Cross- and Counter-plaintiff,

v.

RAYCO/PETERSEN GROUP CONSTRUCTION, Third-party Counter-defendant,

and

H. Wallace Parker, Patricia W. Parker, Tri–County Builders Hardware Company, H.L. Claeys Company, Riesch Floor Covering, Lakeside Floor, Pontiac Ceiling Partitioning Company, Asphalt Specialists, Inc., Zilka Heating, Gary's Electric, Pete's Painting, Bill Karl's Landscaping, Fantin Enterprises, Inc., Smith & Smith Associates Architects, Bob Henderson Construction, Northwest Propane, W.J. Stewart Contract Corporation, Resolution Trust Corporation, as Receiver of New Guaranty Federal Savings and Loan Association, and Northern Propane, Inc., Third-party Cross-defendants.

Nos. 89–73475, 89–73476.

United States District Court,
E.D. Michigan, S.D.

Jan. 8, 1993.

H. Wallace Parker, Bloomfield Hills, MI, for defendant Woodward–Parker Corp.

H. Wallace Parker, pro se.

D. Douglas McGaw, Gregory C. Hamilton, Troy, MI, for defendants Raymond J. Husic, Carl Petersen and Rayco/Petersen.

Richard B. Smutek, Warren, MI, for defendant Tri–County Builders Hardware Co.

Steven G. Freers, Warren, MI, for defendant H.L. Claeys & Co.

Jeffrey W. Rentschler, Mt. Clemens, MI, for defendant Lakeside Floor Covering.

Brad Melampy, Ann Arbor, MI, for defendant Pontiac Ceiling.

Robert E. Kostin, Bloomfield Hills, MI, for defendant Gary's Elec.

Peter L. Conway, Birmingham, MI, for defendants Asphalt Specialists, Bill Karl's Landscape and Smith & Smith Associates.

Robert D. Brignall, Detroit, MI, for defendant Riesch Floor.

Bruce M. Pregler, Royal Oak, MI, for defendant Stewart.

Larry E. Powe, Mt. Clemens, MI, for defendant Resolution Trust.

Stanley W. Kurzman, Bloomfield Hills, MI, for defendant Zilka Heating.

ORDER ACCEPTING MAGISTRATE JUDGE KOMIVES' OPINION AND ORDER GRANTING RAYCO/PETERSEN GROUP'S MOTION FOR PRIORITY

GADOLA, District Judge.

The court, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b), and LR 72.1(d)(2) (E.D.Mich. Jan. 1, 1992), has reviewed the transcript of the December 4, 1992 hearing on this matter, the magistrate judge's December 10, 1992 memorandum opinion and order, and Resolution Trust Corporation's objections filed December 18, 1992. After conducting a *de novo* review, the court accepts the magistrate judge's memorandum opinion and order as the court's findings and conclusions.

Therefore, it is hereby ORDERED that the magistrate judge's December 10, 1992 memorandum opinion and order is ADOPTED.

It is further ORDERED that Rayco/Petersen Group Construction's motion for priority of all construction lien claimants is GRANTED.

SO ORDERED.

MEMORANDUM OPINION AND ORDER

KOMIVES, United States Magistrate Judge.

### A.

This matter is before the Court for determination of the Rayco/Petersen Group Construction's amended motion for priority of all construction lien claimants, filed November 25, 1992. The motion was referred by an order dated November 30, 1992, which stated that I was to hear the parties on December 4, 1992, and determine the matter pursuant to 28 U.S.C. § 636(b)(1)(A). Should the Court conclude that the reference should have been under § 636(b)(1)(B) for a report and recommendation on a "dispositive" matter, see *Columbia Record Productions v. Hot Wax Records,* 966 F.2d 515 (9th Cir.1992), this opinion and order should be construed as a report and recommendation.

Rayco/Petersen Group Construction ("Rayco") was the general contractor for the construction of a commercial building located in Bloomfield Hills, Michigan. The project was financed by Guaranty Federal Savings Bank.[1] A construction loan in the amount of $800,000 was approved, and on August 5, 1988, the construction mortgage on the property was executed. Construction on the project began sometime in September 1988, after the execution and delivery of the mortgage. However, the mortgage was not recorded until October 31, 1988.

Rayco, as the general contractor for the project, now brings this motion for priority of all construction lien claimants. Rayco contends that the first physical improvement on the land occurred, at the latest, on October 4, 1988. The mortgage was not recorded until October 31, 1988. Therefore, Rayco asserts, under the terms of the Michigan

---

1. On November 22, 1989, the Resolution Trust Corporation ("RTC"), as conservator of Guaranty Federal Savings and Loan Association, was substituted for Guaranty.

Construction Lien Act, Mich.Comp.Laws § 570.1101, *et seq.*, the mortgagee's interest is inferior to the liens held by the general contractor and all subcontractors.

### B.

On December 4, 1992, RTC, as mortgagee, filed a response in opposition to Rayco's motion. RTC contends that Rayco offers no authority for the proposition that the priority of all lien claimants may be established by motion. Rather, RTC submits, this determination is replete with issues of fact and, as such, must necessarily be decided at trial. Moreover, RTC argues that, although Rayco submits that its motion is not dispositive, such a determination will necessarily and ultimately determine final claim priorities as between or among the mortgagee, the general contractor and the subcontractors.

RTC further contends that Rayco's motion attempts to treat each of the construction lien claimants on an equal footing despite the existence of equitable circumstances, in particular the fact that Rayco had actual notice of the mortgage prior to commencement of construction or demolition. To the extent that Rayco seeks to establish priority of its or its subcontractors' liens, RTC argues, it should be estopped from claiming priority superior to that of RTC due to (1) its participation in a scheme to secure additional funds, and (2) the fact that Raymond Husic, Rayco's principal, had notice of and participated in procuring the construction loan from Guaranty Federal Savings Bank. Thus, RTC urges, the Court should deny Rayco's motion and enter an order establishing RTC's superior position.

### C.

Rayco asserts that because the mortgage held by RTC was recorded after the first physical improvement occurred on the property, the lien held by Rayco and all of its subcontractors has priority. In support of this assertion, Rayco relies upon portions of the Michigan Construction Lien Act and caselaw interpreting the Act.

The Michigan Construction Lien Act, Mich.Comp.Laws § 570.1101, *et seq.*, deals with the priority of construction liens. It provides, in pertinent part:

(3) A construction lien arising under this act shall take priority over all other inter-

ests, liens, or encumbrances which may attach to the building, structure, or improvement, or upon the real property on which the building, structure, or improvement is erected when the other interests, liens, or encumbrances are recorded subsequent to the first actual physical improvement.

Mich.Comp.Laws § 570.1119(3).

Rayco cites *Durant Construction, Inc. v. Gourley,* 125 Mich.App. 695, 336 N.W.2d 856 (1983), in which the court noted that, under Mich.Comp.Laws § 570.1119, a construction lien, which takes effect when the first actual physical improvement occurs, has priority over a mortgage instrument recorded subsequent to the commencement of the construction work.

The Michigan Supreme Court decision in *Williams & Works v. Springfield,* 408 Mich. 732, 293 N.W.2d 304 (1980), also relied upon by Rayco, defined "commencement" of a building:

The term 'commencement of a building' had a well-established meaning in most states when Michigan incorporated that term into its own mechanics' lien law. As illustrative of this meaning, and in order not to belabor the point, we quote from one such case, while citing the reader to others which preceded or were contemporaneous with Michigan's statute:

'The commencement of a building is the doing of some act upon the ground upon which the building is to be erected, and in pursuance of a design to erect, the result of which act should make known to a person viewing the premises, from observation alone, that the erection of a building upon that lot or tract of land has been commenced.' (citations omitted).

Likewise, early Michigan case law espoused this same idea of keying the concept of 'commencement' in its priority section to some actual, visible work on the land such that it was apparent to all that a building was being erected or improvements were being made.

*Id.* at 740–741, 293 N.W.2d 304.

Rayco also points to the decision of the Michigan Court of Appeals in *Michigan Roofing and Sheet Metal, Inc. v. Dufty Road Properties,* 100 Mich.App. 577, 298 N.W.2d 923 (1980). In *Michigan Roofing,* the commencement of the building preceded the re-

cording of the mortgage. The court in *Michigan Roofing* defined the issue as follows:

> Resolution of the instant case depends on whether sufficient visible on-site construction had taken place prior to the mortgage so that the mechanics' lien would take priority. If not, the mortgage would supersede the lien and the trial court would have been correct in granting summary judgment to C.M.I.

*Id.* at 583, 298 N.W.2d 923.

The court in *Michigan Roofing* held:

> We also believe that the delivery of construction materials to the job site satisfied the guidelines of the [Michigan] Supreme Court's decision in *Williams & Works*. When construction materials are visible on a job site, it is obvious that a building, erection, structure, or improvement is in progress so that all who happen by the site have constructive notice of the existence of mechanics' liens.

> Because the delivery of construction material preceded the giving and recording of the mortgage, the liens take priority over the mortgage. The trial court's grant of summary judgment in favor of C.M.I. is reversed and the case remanded for further proceedings.

*Id.* at 585, 298 N.W.2d 923.

### D.

RTC, in opposing Rayco's motion, has set forth a lengthy summary of events which occurred in this case and which, RTC claims, support its argument for not granting Rayco priority over RTC's mortgage interest. RTC's statement of the facts is as follows:

> The present dispute arises in conjunction with a construction project which was financed by GUARANTY FEDERAL SAVINGS BANK (hereinafter "BANK"). WOODWARD–PARKER CORPORATION, by H. Wallace Parker, its principal, (hereinafter "OWNER") entered into a construction mortgage agreement with BANK for construction of a new building, on a site with an existing structure which had been purchased by H. Wallace Parker. The mortgage package was prepared by a mortgage broker, Thomas Kinney and Associates, with the help of the general contractor on this project, RAYCO/PETERSON [sic] GROUP CONSTRUCTION (hereinafter RAYCO/PETERSON) [sic].

> In fact, it was Raymond Husic who put H. Wallace Parker in contact with this mortgage broker, because two previous mortgage packages put together by Husic and Parker had been rejected by other banks. Based upon representations made in the application process, a construction loan in the amount of Eight Hundred Thousand ($800,000.00) Dollars was approved. On August 5, 1988, the construction mortgage on the subject property was executed and delivered by OWNER in favor of BANK. Raymond Husic, President of RAYCO/PETERSON [sic], a joint venture, testified that he attended the closing at broker Thomas Kinney's offices in Birmingham on August 5, 1988, thus arguably participating in the actual loan closing.

> Construction on the project began sometime in September, 1988, well after the execution and delivery of the mortgage. Construction commenced with the demolition of an existing structure, which necessitated erection of a construction security fence. Raymond Husic testified that he erected the security fence with the help of his brother, which contradicts the Affidavit of Carl Peterson [sic] attached as Exhibit C to Rayco's Amended Motion.

> The first draw on the loan occurred on August 8, 1988 to OWNER to reimburse for costs incurred in connection with the purchase of the real estate, including the existing structure and demolition thereof.... On November 3, 1988, upon submission of a sworn statement, the second draw was paid by BANK, from which RAYCO/PETERSON [sic] reimbursed its subcontractors.

> After construction was well under way, the BANK was declared insolvent by the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corporation named Receiver.

> Initially, the conservator, despite having the statutory authority to avoid the obligation to make further funds available, continued to honor the BANK's obligation under the Construction Loan Agreement with OWNER. In June, 1990, the attorney for subcontractor Great Lakes Glass notified the BANK that a sworn statement previously submitted, allegedly in support of a payment due Great Lakes Glass, bore an unauthorized signature. That is, a

"sworn" statement submitted by the general contractor which purported to bear the signature of the principal of Great Lakes Glass, Joseph LePore, was in fact a false signature.... At this juncture the BANK notified RAYCO/PETERSON [sic] that no further funds would be advanced until this discrepancy had been resolved.

\*   \*   \*   \*   \*   \*

Because of this dispute, the BANK refused to advance any more funds on the project, as the resulting litigation between Woodward–Parker and RAYCO/PETERSON [sic] constituted a default of the Construction Loan Agreement. This litigation, coupled with the discrepancy in the 'sworn statement' provided by RAYCO for payment of its subcontractor, Great Lakes Glass, obligated the RTC as Receiver for BANK, to cease funding the project, and placed the Construction Loan Agreement in default. Consequently, Certificates of Completion were never submitted to BANK or RTC, a final permanent Certificate of Occupancy was never obtained, and the project was not completed by the Permanent Phase date called for in the Construction Loan Agreement.

\*   \*   \*   \*   \*   \*

Finally, the RAYCO/PETERSON [sic] construction joint venture submitted a full unconditional waiver with respect to the subject property, which bears the signature of Raymond Husic and is dated October 27, 1988.

(RTC's brief in response, pp. 1–6).

Based upon these factual assertions, RTC argues that "this scheme" and "the consequent discrepancies" render it inequitable to grant Rayco's motion. RTC further argues:

Crucial to this Court's determination of RAYCO/PETERSON's [sic] entitlement to priority lien claim is the testimony of RAYCO's principal, Raymond Husic. *Husic's own testimony clearly establishes that: Husic led H. Wallace Parker to the mortgage broker who eventually put the deal together; assisted OWNER in the obtaining [of] funds from the BANK; had notice of BANK's involvement as of June 28, 1988 per a Notice of Commencement which identified RAYCO/PETERSON [sic] as the OWNER'S 'designee', and purported to the world that BANK was lending the funds of the project; and that Husic in fact attended the closing on the mortgage loan on August 5, 1988, at the office of the mortgage broker to whom he had provided the subject mortgage package.*

(RTC's brief in response, pp. 8–9) (emphasis in original).

Because this "scheme" involved Raymond Husic's knowledge and notice of the mortgage, RTC argues, that knowledge is imputed to Rayco, which should be equitably estopped from asserting priority under the Michigan Construction Lien Act (*see* RTC's brief in response, p. 9).

### E.

RTC relies upon a 1933 decision of the Michigan Supreme Court, *Heide v. Societatea Romana*, 262 Mich. 394, 247 N.W. 702 (1933). In *Heide,* the court held that the priority position of a lienholder can be altered where the surrounding circumstances render it inequitable for the lienholder to take priority over the construction lender. However, if the holding in *Heide* were applicable to all such cases, "the exception would swallow the rule", since general contractors often assist owners in securing mortgages for construction projects.

■ RTC also asserts that, under Michigan law, the purpose of recording a mortgage is simply to give notice to third persons, but that recording is not required as notice between parties to the mortgage (*see* RTC's brief in response, p. 10). However, this proposition defeats the purpose of Michigan's recording statute. Michigan law requires a mortgagee to record his interest in order to perfect his lien over other lienholders. *See* Mich.Comp.Laws § 565.29. Pursuant to law, RTC had an obligation to record its mortgage in a timely fashion.

■ RTC also points to a signed waiver executed by Raymond Husic on October 27, 1988, with respect to the subject property (*see* RTC's Exhibit H). RTC contends this waiver raises a question of fact as to whether Rayco waived its priority. In support of this position, RTC relies upon the same decision of the Michigan Court of Appeals (*Durant Construction, Inc. v. Gourley,* 125 Mich.App. 695, 336 N.W.2d 856 (1983)), cited by Rayco.

In *Durant,* the court found that a construction lien can be impliedly waived by the conduct of a party.

However, the signed waiver applies only to the "survey and stakeout" of the subject property. Contrary to RTC's assertion, the waiver does not apply to the entire construction project. Nor do I find any conduct of Rayco's which would impliedly waive the priority of its lien. Accordingly, this argument is unpersuasive.

### F.

There are no disputed issues of fact which preclude granting Rayco's motion. The plain language of the Michigan Construction Lien Act establishes Rayco's priority vis-a-vis RTC's mortgage because the mortgage was recorded after construction began. The "equitable factors" cited by RTC do not displace the language of the statute, nor do RTC's assertions that Rayco was part of a "scheme". Under Michigan law, recording of a mortgage is required to establish priority. Since RTC's mortgage was filed after construction began, its interest must be held subordinate to that of the construction lien claimants under Mich.Comp.Laws § 570.-1119(3). Accordingly, Rayco's motion is GRANTED.

### G.

The attention of the parties is drawn to Fed.R.Civ.P. 72(a), which provides a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Should it be determined that the reference to me is more appropriately one under § 636(b)(1)(B), *see infra* at p. 1, this opinion and order shall be construed to be a report and recommendation. In that event, the following notice is required:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.

1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.