**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 23, 2002

ROBERT and PATRICIA STOKES,

    Plaintiffs-Appellants,
    Cross-Appellees,

v

No. 119074

MILLEN ROOFING COMPANY,

    Defendant-Appellee,
    Cross-Appellant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

This is a dispute over money claimed by cross-plaintiff Millen Roofing Company from the cross-defendant homeowners, Robert and Patricia Stokes, related to the parties' residential construction contract. We hold that (1) Millen's construction lien was properly extinguished because it was invalid and unenforceable, and (2) MCL 339.2412 barred Millen, an unlicensed contractor, from seeking compensation from plaintiffs under its contract with them for the installation of a slate roof.

Millen Roofing Company, a roofer unlicensed in Michigan, placed a lien on the title to the Stokes' home after they refused to pay the amount it claimed was due. The Stokes sued to clear title, alleging that the lien was invalid and that the residential builders act[1] barred Millen from recovery under the contract. Millen counterclaimed for breach of contract, quantum meruit, and foreclosure of the construction lien.

In response to various motions by the parties, the trial court dismissed the counterclaim and extinguished the construction lien. After Millen submitted an amended counterclaim raising equitable claims, the court determined that Millen was entitled to equitable relief. It held that the Stokes could pay Millen the full amount of the original contract price. If they chose not to do so, Millen could reimburse plaintiffs for payments made and reclaim the slate it had installed on plaintiffs' roof. Both parties appealed from the trial court's decision.

The Court of Appeals affirmed, following the precedent of *Republic Bank v Modular One LLC*, 232 Mich App 444; 591 NW2d 335 (1998). 245 Mich App 44; 627 NW2d 16 (2001). However,

_____

[1]MCL 339.2401 *et seq.*

the panel disagreed with the holding in *Republic* and sought the vote of a special panel to resolve the conflict between its view and the holding in *Republic*. No panel was convened.

Both parties appealed from the Court of Appeals judgment. We granted the Stokes' application for leave to appeal along with Millen's cross appeal of the dismissal of its legal claims. 465 Mich 909 (2001).

## II

The residential builders act states:

> A person or qualifying officer for a corporation . . . shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract. [MCL 339.2412(1).][2]

Under the statute, a builder may not bring an action for collection of compensation unless it can prove that it possesses the license "required by this article."

Millen argues that the only claims barred are those arising from work for which "a license is required by this article." It asserts that the "article" to which the statute refers is article 24 of the Occupational Code. MCL 339.2401 *et seq.* Article 24 contains language that describes the scope of a builder's license, application procedure, qualifications,

_____

[2]This statute was amended while the case was being appealed. A subsection was added that is not relevant to this case.

3

and process for suspension of a license. It also contains procedures for complaints against licensees.

Millen asserts that no explicit requirement of a license is found in article 24. Instead, it contends, the express prohibition on unlicensed activity is in article 6 of the Occupational Code. MCL 339.601(1). Therefore, Millen insists that its claims are not barred because, although a license was required, it was not required by article 24.

Millen's reading of § 2412 would render the statute's prohibition nugatory. Under its interpretation, no license of any kind would be "required" by article 24, and no claim of any kind would be barred.

In actuality, virtually every section of article 24 specifically refers to a license requirement. Indeed, § 2403 contains several exceptions to the licensure requirement. By implication, if a residential builder does not fit within one of the exceptions there, it must be licensed. When the Occupational Code is read as a whole and its provisions harmonized to fulfill the purpose of the Legislature, it becomes clear that Millen had to be licensed. *State Treasurer v Wilson*, 423 Mich 138, 145; 377 NW2d 703 (1985). Section 601 specifically refers to occupations regulated under "this act," the Occupational Code. Residential builders are regulated pursuant to article 24 of the act, unless an exception from

that article applies.[3]

Millen argues in the alternative that, even if § 2412 applies, it does not prevent it from recovering the reasonable value of the labor and materials furnished to plaintiffs. It claims that in such an action it would be seeking merely a reimbursement for its materials, and not "compensation" as that word is used in the act.

Because "compensation" is not defined in the act and is not a term of art, we apply a dictionary definition. *Random House Webster's College Dictionary* (1995) defines "compensation" as

> something given or received as an equivalent for services, debt, loss, injury, etc.; indemnity; reparation; payment."

Applying that meaning of "compensation," we find that § 2412 disallows an action for the reasonable value of materials conveyed, because such an action seeks "payment" or "something

---

[3]We do not agree with the dissent's footnoted suggestion that Millen could be exempt from licensing as a subcontractor of the plaintiffs. The dissent points out that plaintiffs are allowed by § 2403(b) of the act to function in the capacity of a residential builder with respect to property they own. It suggests that there is a "strong argument" that, under this contract, Millen could be exempted from licensing as a subcontractor of plaintiffs.

In fact, the act prevents Millen from being exempted. If Millen were not the contractor here, it would have to be a person "engage[d] in the business of or act[ing] in the capacity of a residential builder" for purposes of the act. Sections 2401(a) and 2403. At subsection (e) of § 2403, such persons must be licensed unless they are working with a contractor licensed under the act. Plaintiffs could have been contractors, but they were never licensed under the act.

given or received as an equivalent for [a] debt" or "loss."

Finally, Millen argues that, even if it is barred from seeking compensation, it should be allowed to recover the value of the materials it supplied. A "supplier" does not require a license under the act.

The fact that Millen was not required to be licensed to supply slate is of no consequence here. In order for the "supplier" portion of this contract to be enforced, it would have to be severed from the illegal portions of the agreement. As the dissent points out, for that to occur, the illegal provision must not be central to the parties' agreement. See 2 Restatement Contracts, § 603, pp 1119-1120.

> [I]f the agreements are interdependent and the parties would not have entered into one in the absence of the other, the contract will be regarded . . . as entire and not divisible. [3 Williston, Contracts (3d ed), § 532, p 765.]

Hence, the contract can be bifurcated only if the agreement to install the materials is independent of the agreement to supply them. But, here the agreements were not independent of one another. Applying the test formulated by the dissent, it becomes apparent that the illegal section, which provided for the installation of a slate roof, was central to the parties' agreement. The parties' contract required Millen to "furnish and install" the roofing components and did not specify the portion of the total cost attributable solely to materials. If the parties had not

6

intended Millen to install the roof, the Stokes would have had the installer they selected deliver the slate. It follows that the contract is entire and indivisible.

Even if, normally, the contract could be bifurcated, the statute prohibits it. Section 2412 bars a suit for compensation if a license was necessary for performance of "an act or contract." The statute requires us to look for either an act or a contract requiring a license. It does not make provision for bifurcating building contracts into separate labor and supply components. Accordingly, it is irrelevant that Millen could have supplied slate without a license. Millen's counterclaim was properly disallowed.[4]

### III

Millen further alleges that, notwithstanding its lack of a license, its lien is valid. The Construction Lien Act[5] states:

> A contractor shall not have a right to a construction lien upon the interest of any owner or lessee in a residential structure unless the contractor has provided an improvement to the residential structure pursuant to a written contract between the owner or lessee and the contractor and any amendments or additions to the contract also shall be in writing. The contract required by this section shall contain a statement, in type no smaller than that of the body of the

---

[4]All members of the Court share the concern that the result reached here seems on its face unfair to Millen. However, we, and the concurring justices, agree that this result is mandated by the residential builders act.

[5]MCL 570.1101 *et seq.*

7

contract, setting forth all of the following:

(a) That a residential builder or a residential maintenance and alteration contractor is required to be licensed under article 24 . . .

(b) If the contractor is required to be licensed to provide the contracted improvement, that the contractor is so licensed.

(c) If a license is required, the contractor's license number. [MCL 570.1114.]

A "contractor" is defined in the statute as "a person who, pursuant to a contract with the owner or lessee of real property, provides an improvement to real property." MCL 570.1103(5). Millen built a slate roof pursuant to a contract with the owners. Therefore, it is a contractor. Under subsections (b) and (c), it needed to state that it was licensed and provide its license number in order to have a right to a lien.

Millen argues that its lack of a contractor's license number is not dispositive, because the Construction Lien act contains no penalty for failure to be licensed. It relies on *In re Craft*,[6] a case in which a federal bankruptcy court held that failure to comply with the requirement to furnish a contractor's license number does not invalidate a lien. Because the statute is remedial, the *Craft* court was satisfied with the defendant's "substantial compliance" with the requirements of the act.

---

[6]120 BR 84 (ED Mich, 1989).

8

We find *Craft* inapplicable to this case. The contractor there actually possessed a license, but did not properly write the license number on the form for a lien. We will not extend a "substantial compliance" protection to Millen because it lacked a license and could not have completed the form properly under any circumstances. There is nothing in the Construction Lien Act to suggest that the Legislature intended the act to extend "substantial compliance" protection to unlicensed builders.

IV

Having determined that the trial court properly extinguished Millen's construction lien and dismissed its legal claims, we consider whether Millen was entitled to equitable relief. This Court first considered the interplay between the residential builders act and a court's equitable powers in *Kirkendall v Heckinger*, 403 Mich 371; 269 NW2d 184 (1978).

There, plaintiff Frank Kirkendall conveyed a parcel of property to the defendant contractor. Pursuant to the contract, the defendant then paid off Frank's land contract and back taxes and constructed a house on the land for Frank's son, plaintiff Dennis Kirkendall. Dennis helped with the construction. A dispute arose about the amount plaintiffs owed, and the plaintiffs brought suit. They asked for equitable relief that would deem the sale an equitable

mortgage, return the land to plaintiffs, clear title, and eject defendant from the land. Defendant counterclaimed for breach of contract.

This Court held that the residential builders act barred the defendant's counterclaim because he had no Michigan residential builder's license. However, the dismissal of the counterclaim did not end the litigation. The Court had to clear title. It declared that the sale to defendant was an equitable mortgage. If the plaintiffs wanted clear title, they had to first do equity by paying the amount owed to the defendant as an equitable mortgagee:

> The plaintiffs sought an equitable remedy. Before ordering the conveyance to Dennis Kirkendall, the trial court was obliged to determine the amount the plaintiffs were required to pay the defendants in order to do equity. As the equitable mortgagee, Heckinger was entitled as a condition to reconveyance to reasonable expenditures for improvements on the property made with the Kirkendalls' consent (and in fact with Dennis Kirkendall's active participation) while [defendant] had title to the property. [*Id.* at 374.]

The Court of Appeals considered the *Kirkendall* decision in *Republic Bank* and applied it, enlarging its scope. In *Republic Bank*, the plaintiff had purchased eight residential lots on which the defendant had a lien. The plaintiff asserted that the liens were invalid, because they were for monies owed for residential improvements made by the defendant, who did not possess a license.

The Court of Appeals concluded that, as an unlicensed

10

builder, the defendant could not place a lien on the properties. However, it required the plaintiff to do equity by paying the defendant for the value of the homes before getting equity in the form of a clear title. The *Republic Bank* Court declined to distinguish the *Kirkendall* decision even though, in *Republic Bank,* the defendant had no valid lien or mortgage that survived dismissal of his claim and clouded title.

In the case before us, the Court of Appeals followed *Republic Bank* because it was binding authority. MCR 7.215(I)(1). Still, the Court made clear its dissatisfaction with the holding in that case, opining that *Republic Bank* was wrongly decided and that it should have distinguished *Kirkendall* on its facts.

We agree that *Kirkendall* must be distinguished from *Republic Bank.* First, the Court's reason for entertaining equity in *Kirkendall* was because the conveyance to the defendant was valid and clouded title. After the defendant's counterclaim was dismissed, the plaintiffs' complaint remained, and the Court had to find an equitable remedy.

Conversely, in both *Republic Bank* and this case, once it was determined that the defendants' liens on the properties were defective, the titles were clear. The complaints could be dismissed. No further relief was necessary, equitable or legal. By not recognizing this distinction, the *Republic Bank*

11

decision allowed an unlicensed contractor leverage to force payment, using equity in a circumstance where no equity was required. Moreover, the relief afforded was barred at law by § 2412.

The *Kirkendall* case also differs from the case at bar in another key respect: the defendant's property right there was not only created by the plaintiff, it was acquired in a valid and legal manner. By contrast, both Millen and the defendants in *Republic Bank* acquired liens by committing a misdemeanor, performing an unlicensed activity. MCL 339.601(3). In addition, they sought to force payment using a construction lien acquired in derogation of the Construction Lien Act.

In its bench ruling granting equitable relief to Millen, the trial court stated that a court in equity may provide for nonlegal, equitable remedies to avoid unduly harsh legal doctrines. Its analysis is invalid because, in this case, equity is invoked to avoid application of a statute. Courts must be careful not to usurp the Legislative role under the guise of equity because a statutory penalty is excessively punitive.[7] As the Court of Appeals stated:

[7]Our concurring colleagues assert that the Stokes used the statutory provision to avoid paying for the slate roof. In fact, they tendered a written offer to Millen in July 1994 to pay the balance of the original contract, along with a $2,684 change order, in exchange for unconditional waiver of lien. Millen rejected their offer.

Contrary to Justice Markman's assertion, slip op at 3, n 3, we make no assessment of the Stokes' motives in their

12

Regardless of how unjust the statutory penalty might seem to this Court, it is not our place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree. [245 Mich App 57-58.]

Moreover, as was stated in *Bilt-More Homes, Inc v French*, 373 Mich 693, 699; 130 NW2d 907 (1964):

"Contracts by a residential builder not duly licensed are not only voidable but void—and it is not for a trial court to begin the process of attrition whereby, in appealing cases, the statutory bite is made more gentle, until eventually the statute is made practically innocuous and the teeth of the strong legislative policy effectively pulled. If cases of such strong equities eventually arise that the statute does more harm than good the legislature may amend it . . . ."

We overrule the holding of *Republic Bank*. If it were allowed to stand, any unlicensed contractor could defy the residential builders act and the Construction Lien Act by refusing to obtain a Michigan residential builder's license. It could contract with a residential home owner to perform work on the owner's home. Then, if a dispute arose over money due, it could cloud the title with a lien and wait until the owner brought suit to clear title. It could then recover the amount due in an equity judgment. Such a result violates MCL 339.2412 and ignores key distinctions in *Kirkendall*.

---

dealings with Millen. As our colleagues are well aware, their good faith or lack of it was not a consideration available to us in rendering this decision. If equity were available here, we might all have agreed that the trial court acted fairly and reasonably in applying equity as it did.

## CONCLUSION

We hold that Millen Roofing Company's failure to obtain a residential builder's license constitutes a bar to its seeking compensation for installing slate on the Stokes' roof, pursuant to MCL 339.2412. Also, because Millen was unlicensed, its construction lien was invalid. Finally, Millen cannot have equitable relief because any such relief would allow equity to be used to defeat the statutory ban on an unlicensed contractor seeking compensation for residential construction.

The order of the trial court is reversed and the case remanded for proceedings consistent with this opinion.

CORRIGAN, C.J., and TAYLOR and YOUNG, JJ., concurred with KELLY, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

ROBERT and PATRICIA STOKES,

    Plaintiff-Appellants,
    Cross-Appellees,

v                                                              No.  119074

MILLEN ROOFING COMPANY,

    Defendant-Appellee,
    Cross-Appellant.

_____

WEAVER, J. (*concurring*).

I concur in the majority's conclusion that the contract may not be bifurcated into separate labor and supply components; the contract is entire and indivisible.

I also concur in the majority's conclusion that defendant Millen Roofing may not be awarded equitable relief.  The residential builders act clearly prohibits a contractor not licensed in this state from maintaining an action for compensation.[1]  Likewise, under the Construction Lien Act, MCL

---

[1] As noted in the majority opinion, MCL 339.2412(1) provides in pertinent part:

    A person or qualifying officer for a corporation or member of a residential builder or residential maintenance and alteration contractor
                     (continued...)

570.1101 *et. seq.*, a contractor does not have a right to a construction lien unless it complies with licensing requirements. MCL 570.1114.

In this particular instance, where plaintiff homeowners invited defendant to enter into the illegal contract, knowing defendant contractor was unlicensed in Michigan and having already availed themselves of the statute to avoid paying a previous unlicensed contractor, the statutory provision for noncompliance with the licensing requirement undoubtedly imposes a heavy penalty on defendant, while providing an unwarranted windfall to these plaintiffs. Plaintiffs, who sought out defendant and helped draft the actual contract, do not allege that defendant was incompetent or inexperienced or that defendant's work was of inferior quality, and defendant could hardly be characterized as some fly-by-night contractor. Rather, plaintiffs are now using the statutory provision to their advantage to avoid paying for their slate roof.

Nonetheless, in entering into the contract, defendant

---

[1](...continued)
shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract.

contractor specifically violated the licensing requirements of the residential builders act, albeit at the plaintiff homeowner's invitation. Further, in filing a lien to seek compensation for its services, which was done at defendant's own initiative, defendant violated both the residential builders act and the Construction Lien Act. Additionally, as noted by the majority, defendant rejected plaintiffs' offer to pay the balance of the $162,519 contract price plus a $2,684 change order. Defendant rejected the offer because it believed it was owed approximately $50,000 more than plaintiffs offered to pay. The language of the statutes is clear, and, under these circumstances, equity may not be used to avoid their effect.

For these reasons, I concur in the result of the majority opinion.

ROBERT and PATRICIA STOKES,

    Plaintiffs-Appellants,
    Cross-Appellees,

v                                   No. 119074

MILLEN ROOFING COMPANY,

    Defendant-Appellee
    Cross-Appellant.

_____

MARKMAN, J. (*concurring*).

I concur in the result reached by the majority, as well as its analysis, because I agree that (1) cross-plaintiff's, Millen Roofing Company's, construction lien was invalid under MCL 570.1114 because Millen was unlicensed, (2) Millen cannot seek compensation from the cross-defendant homeowners, Robert and Patricia Stokes, under his contract with them for the installation of a slate roof because MCL 339.2412 prevents an unlicensed contractor from seeking such compensation, and (3) Millen is not entitled to equitable relief because allowing

such relief would essentially enable Millen to circumvent a statute that expressly prohibits an unlicensed contractor from seeking compensation for the performance of an act or contract for which a license is required.  Accordingly, I would reverse the trial court and remand this case to that court.

I write separately simply to point out the unfairness of the result reached here today—a result nonetheless mandated by the residential builders act.  The Stokes have obtained a roof from Millen at substantially below the contract price on the basis that Millen lacked a residential builder's license; Millen is simply out of luck for the time, the materials, and the money he has put into this roof's construction because he lacked this license.  What renders this particularly unfair in this case is that the Stokes knew that Millen was unlicensed, knew that this meant that Millen would be unable to bring suit against them for their failure to pay and be unable to obtain a lien against their property, and had expressly indicated to Millen that there was no need for him to be or become licensed.[1]  In addition, the Stokes repeatedly assured Millen

---

[1] Matt Millen testified that Mrs. Stokes had told him that the "licenses would be her responsibilities," that the license "wasn't a problem," and that the license "was taken care of."  The Stokes further communicated to Millen that they would be willing to waive the assertion of Millen's unlicensed status in exchange for Millen's waiver of his right to file a construction lien.  While such a communication is in accord with Millen's assertion that he was unaware that such a lien
(continued...)

2

that he would be paid for his work.[2]

The Stokes here avoid payment for work they requested from Millen with full knowledge that Millen was required to be licensed and that he was not. They also had full knowledge that, as a result of Millen's status, they would be able to avoid paying him for his work, as evidenced by the fact that the Stokes had recently prevailed in *another* lawsuit against an unlicensed contractor they had hired to do home improvement work. Under these facts, it appears that the Stokes were seeking to take financial advantage of Millen's unlicensed status.[3]

---

[1](...continued)
was unlawful, and that he was acting in good faith when he subsequently filed the lien, it is also consistent with the Stokes' interest in avoiding the need to bring a suit to quiet title.

[2] There is no indication from either party that the work eventually performed by Millen was below par or substandard in any respect. Thus, the Stokes had no apparent reason not to pay Millen for his work, as agreed.

[3] I do not believe, as the majority apparently does, that the fact that the Stokes had, at one juncture, offered to pay the balance of the contract price in exchange for an unconditional waiver of lien necessarily means that the Stokes were acting in good faith during the entirety of this process. The fact that the Stokes *now* are unwilling to pay the contract price, and *now* are strenuously opposed to the trial court's decision, which essentially ordered them to do nothing more than pay the contract price, causes me to disagree with the majority in its assessment of the Stokes' conduct. The majority states that it makes "no assessment" of the Stokes' motives, slip op at 13, n 8, but this statement is difficult to reconcile with its immediately preceding statement in the
(continued...)

3

In fashioning equitable relief, the trial court sought to maintain the parties in the status quo ante. That is, the court awarded Millen the amount of money that the Stokes had agreed to pay Millen for the roof minus the amount that the Stokes had already paid Millen.[4] To the extent that equity was appropriately applied in this case, I believe that the trial court acted altogether fairly and reasonably, indeed correctly.

However, despite this personal view that allowing the Stokes here to have their roof without paying Millen the contract price is a highly inequitable result, I nonetheless agree with the majority that we cannot allow equity to contravene the clear statutory intent of the Legislature. Such an intent is established in the residential builders act, which prohibits unlicensed residential builders from recovering compensation from homeowners for their work. The Legislature has determined that one, very considerable, penalty for performing work without the required license is that the unlicensed builder will be denied the ability to sue

---

[3](...continued)
same footnote.

[4] The trial court did not award Millen any portion of the $52,824 in "extras" that Millen claimed the Stokes owed him. Rather, the trial court merely ordered the Stokes to pay Millen the balance of the agreed upon contract price, which was $113,269, as the Stokes had agreed to pay Millen $165,203 for the roof and had only paid Millen $51,934 for the roof.

4

for payment for the work performed. The trial court here, despite the best of intentions, circumvented this legislative intent by ordering the Stokes to pay Millen for the work performed, even though Millen performed the work without the required license. This is impermissible under the language of MCL 339.2412. Accordingly, if such inequitable results are to be avoided, it is the Legislature that must take action.

At the time *Republic Bank v Modular One LLC*, 232 Mich App 444; 591 NW2d 335 (1998), was decided, a case that I authored, I believed that *Kirkendall v Heckinger*, 403 Mich 371; 269 NW2d 184 (1978), mandated the result reached in *Republic Bank*. At the time, I understood *Kirkendall* to stand for the proposition that equity may be invoked on behalf of an unlicensed builder to require a homeowner to pay for work done when such homeowner seeks to clear title. However, upon further reflection, and after considering the analysis of the majority opinion, I now agree with the majority that *Republic Bank* erred and that *Kirkendall* was reasonably distinguishable.

In *Kirkendall*, the unlicensed builder had an equitable mortgage on the subject property. When the homeowner filed suit to clear his title, the Court concluded that before title could be cleared, the homeowner would first have to pay the unlicensed builder for the improvements that he made on the property with his consent. *Kirkendall, supra* at 374. In

5

*Republic Bank*, as well as in this case, the unlicensed builders did not have equitable mortgages on the properties; instead they simply had invalid liens. Therefore, when the homeowners brought suit to clear their titles, there was no need for the homeowners to first pay the unlicensed builders because the liens were simply unenforceable. That is, while in *Kirkendall*, there was a valid encumbrance on the land requiring the homeowner to do equity before the cloud on his title could be removed, in *Republic Bank* and this case, there simply were no valid encumbrances on the lands, and thus the homeowners should not have been required to do equity in order to get the clouds on their titles removed. Accordingly, I now agree with the majority that *Republic Bank* erred, and that it should be overruled. The homeowners here should not have been required to pay the unlicensed builder for the roof because MCL 339.2412 expressly prohibits an unlicensed contractor from seeking compensation for the performance of an act or contract for which a license is required.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

ROBERT and PATRICIA STOKES,

    Plaintiffs-Appellants
    and Cross-Appellees,

v

No. 119074

MILLEN ROOFING COMPANY,

    Defendant-Appellee,
    and Cross-Appellant.

_____

CAVANAGH, J. (*dissenting*).

The majority holds that the residential builders act (RBA), MCL 339.2401 *et seq.,* bars an unlicensed builder from seeking compensation under a contract for both labor and supplies because a license is required for the labor component. Because I would hold that such a contract may be bifurcated into separate labor and supply components under the RBA, so that an unlicensed builder may recover for the supply costs, I respectfully dissent.

Section 2412(1) of the RBA states:

A person or qualifying officer for a corporation . . . shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract.

The RBA requires that a residential builder be licensed; however, the definition of a residential builder does not include supplying duties, as the majority notes. Thus, a license is required to install, but not to supply.

Defendant, known by plaintiff to be an unlicensed builder, contracted with plaintiffs to "supply and install" a slate roof.[1] The majority asserts that because a license was

---

[1] A strong argument can be made that under this contract, plaintiffs were the property owners and the general contractors with defendant as the subcontractor. As the defendant pointed out in its supplemental brief, plaintiffs clearly requested defendant to return to the job, plaintiffs listed defendant as a subcontractor, and plaintiffs supervised over $700,000 worth of contracts. This would exempt defendant from the license requirement under MCL 339.2403(b), which provides:

Notwithstanding article 6, a person may engage in the business of or act in the capacity of a residential builder or a residential maintenance and alteration contractor or salesperson in this state without having a license, if the person is 1 of the following:

* * *

(b) An owner of property, with reference to a structure on the property for the owner's use and occupancy.

(continued...)

2

required for the installation duty of the contract, defendant may not recover for performing its duty as a supplier. Although § 2412 looks for the "performance of an act or contract" that requires a license, I cannot agree that the *entire contract* qualifies as one requiring a license.

The contract expressly imposed two separate duties on defendant: to "supply and install" the slate. According to the majority, the installation duty, which requires a license, prevails over the supply duty, which does not require a license. Reading the contract as the majority does effectively requires an unlicensed builder who has contracted to supply materials in a single contract (in which he has also agreed to install those supplies) to have a license *to supply*. The RBA does not provide for such a result. Rather, the act does allow bifurcating the labor and supply components of a single contract by barring lawsuits for compensation of a contract *that requires a license*. The bar, therefore, is expressly limited to lawsuits involving a contract that provides for the specific acts that require a license under the RBA, i.e., installing. I cannot agree that including both an installation and supply duty into one document extends the license requirement necessary to perform the installation duty

---

[1](...continued)
Because I conclude that the contract is severable, however, I do not rest on this argument.

3

to the supply duty, thus, generating an unenforceable document. The result of such a holding requires this unlicensed builder to create a separate supply contract, stating the same information already repeated in a "supply and install" contract, but limited to those duties relevant to supplying. In other words, the majority's holding mandates bifurcation.

My position is supported not only by a plain reading of the RBA, but also by traditional contract principles.

Under the occupational code, engaging in a licensed activity without a license is a misdemeanor, thus, making the installation part of the contract in this case illegal.[2] The general rule is that severance of an illegal provision of a contract is warranted and the lawful portion of the agreement is enforceable when the illegal provision is not central to

---

[2] MCL 339.601(1) states:

> A person shall not engage in or attempt to engage in the practice of an occupation regulated under this act or use a title designated in this act unless the person possesses a license or registration issued by the department for the occupation.

MCL 339.601(3) describes the penalty for such a violation:

> A person, school, or institution which violates subsection (1) or (2) is guilty of a misdemeanor, punishable by a fine of not more than $500.00, or imprisonment for not more than 90 days, or both.

4

the parties' agreement and the illegal provision does not involve serious moral turpitude, unless such a result is prohibited by statute. See 2 Restatement Contracts § 603, pp 1119-1120; Calamari & Perillo, Contracts, 3d, § 22-6.

As noted, I cannot agree that the RBA prohibits severance. Moreover, in my view, the illegal provision, providing for defendant to engage in the separate duty of installation, is not central to the parties' agreement that the defendant "supply and install" a slate roof. The legal provision, defendant engaging in the separate duty of supplying, is clearly an entirely different component of the contract, therefore, warranting its enforcement.

For the above reasons, I would hold that defendant was only barred from the breach of contract suit seeking compensation for the installation services and allow defendant's suit for supply costs. Accordingly, I would conclude that the trial court erred in summarily disposing of defendant's entire breach of contract action.